**SOUTHERN RY. CO. v. ALABAMA PUBLIC SERVICE COMMISSION et al.**

**Civ. A. No. 681.**

United States District Court
M. D. Alabama, N. D.

July 20, 1950.

J. T. Stokely, of Birmingham, Ala., Charles Clark, of Washington, D. C., and, Marion Rushton, of Montgomery, Ala., for plaintiff.

A. A. Carmichael, Attorney General of Alabama, M. R. Nachman, Assistant Attorney General, Richard T. Rives and John C. Godbold, both of Montgomery, Ala., for defendants.

Before McCORD, Circuit Judge, and KENNAMER and LYNNE, District Judges.

LYNNE, District Judge.

Resting the jurisdiction of the district court upon the Federal question and amount in controversy provisions of Title 28, § 1331, U.S.C.A., or upon the diversity of citizenship and amount in controversy provisions of Title 28, § 1332, U.S.C.A., and that of a district court of three judges upon the provisions of Title 28, § 2281, U.S.C.A., plaintiff, a Virginia corporation, complained of the Alabama defendants and prayed for both temporary and permanent injunctive relief against them.

Plaintiff's basic insistence is that the revenue derived from the operation of its passenger trains Nos. 7 and 8 between Tuscumbia, Alabama, and Chattanooga, Tennessee, is grossly disproportionate to the direct expenses and that the continuation of such train service is not demanded or required by the public necessities.

Alleging the exhaustion of administrative remedies, plaintiff exhibits its petition for a permit allowing abandonment of such service, filed with defendant, Alabama Public Service Commission, September 13, 1948, pursuant to the requirements of Title 48, §§ 35 and 106, Code of Alabama 1940. There follow averments calculated to show undue delay in the hearing and consideration of the petition culminating in an adverse order entered by defendant Commission on April 3, 1950.

Emphasizing the impact of the Commission's order within the framework of the statutory scheme of regulating transportation companies, Title 48, Code of Alabama 1940, plaintiff makes clear that it is impaled on the horns of a dilemma. If it continues the operation of such trains, it will lose substantial sums of money. If it ignores the Commission's order and abandons such services, it will face the imposition of severe sanctions under pertinent statutes. Either course, it complains, will result in irreparable damage unless this court grants injunctive relief.

Following the constitution of a three-judge district court in conformity with the provisions of Title 28, § 2281, U.S.C.A., this action was, on May 8, 1950, set down for a hearing on plaintiff's prayer for a temporary injunction at Montgomery, Alabama, on May 22, 1950.

Upon its convocation, this court was met at the threshold with three several motions, in which all defendants joined, raising certain adjective problems relating to the jurisdiction of the court, the propriety of exercising such jurisdiction as it might be found to have, and the right of plaintiff to injunctive relief in any event.

At the conclusion of oral arguments, the court, after consultation, announced its opinion that each of such motions was due to be overruled for reasons thereafter to be stated. Whereupon, it was stipulated by counsel for the parties that evidence should be adduced and the case submitted upon plaintiff's prayer for a permanent injunction.

I. Adopting a literal construction of the following language of Title 28, §

2281, U.S.C.A.: "An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title. [June 25, 1948, c. 646, 62 Stat. 968.]" defendants challenge the jurisdiction of this District Court of three judges because no attack is leveled at the constitutionality of the State statutes under which the defendant Commission acted. Since, it is argued, plaintiff does not seek an adjudication of unconstitutionality of such statutes, but relies squarely upon the assertion that the order of the defendant Commission denying plaintiff the right to abandon the passenger train service concerned is confiscatory in effect and therefore violative of the Fourteenth Amendment to the Constitution of the United States, the quoted statute is manifestly inapplicable.

Dispositive of this contention is Oklahoma Natural Gas Co. v. Russell, 1923, 261 U.S. 290, 43 S.Ct. 353, 67 L.Ed. 659, in which Mr. Justice Holmes, delivering the opinion for a unanimous court, stated: "A doubt has been suggested whether these cases are within Sec. 266 of the Judicial Code, Act of March 3, 1911, c. 231, 36 Stat. 1087, 1162; as amended by the Act of March 4, 1913, c. 160, 37 Stat. 1013. The section originally forbade interlocutory injunctions restraining the action of state officers in the enforcement or execution of any statute of a State, upon the ground of its unconstitutionality, without a hearing by three judges. The amendment inserted after the words 'enforcement or execution of such statute' the words 'or in the enforcement or execution of an order made by an administrative board or commission acting under and pursuant to the statutes of such State' but did not change the statement of the ground, which

still reads 'the unconstitutionality of such statute.' So if the section is construed with narrow precision it may be argued that the unconstitutionality of the order is not enough. But this Court has assumed repeatedly that the section was to be taken more broadly. Louisville & Nashville R. R. Co. v. Finn, 235 U.S. 601, 604, 35 S.Ct. 146, 59 L.Ed. 379; Phoenix Ry. Co. v. Geary, 239 U.S. 277, 280, 281, 36 S.Ct. 45, 60 L.Ed. 287; Cumberland Telephone & Telegraph Co. v. Louisiana Public Service Commission, 260 U.S. 212, 43 S.Ct. 75, 67 L.Ed. 217; Western & Atlantic R.R. v. Railroad Commission of Georgia, 261 U.S. 264, 43 S.Ct. 252, 67 L.Ed. 645. The amendment seems to have been introduced to prevent any question that such orders were within the section. It was superfluous, as the original statute covered them. Louisville & Nashville R.R. Co. v. Garrett, 231 U.S. 298, 301, 318, 34 S.Ct. 48, 58 L.Ed. 229; Atlantic Coast Line R.R. Co. v. Goldsboro, 232 U.S. 548, 555, 34 S.Ct. 364, 58 L.Ed. 721; Grand Trunk Western Ry. Co. v. Railroad Commission of Indiana, 221 U. S. 400, 403, 31 S.Ct. 537, 55 L.Ed. 786. But it plainly was intended to enlarge not to restrict the law. We mention the matter simply to put doubts to rest."

We hold that a Federal three-judge district court has jurisdiction to entertain a complaint alleging the unconstitutionality of an order of an administrative board or commission, acting under a State statute and praying for injunctive relief against the enforcement, operation or execution of such order, although no attack is made upon the validity of the statute itself.[1]

■ II. Insisting that this court should herein decline to exercise its jurisdiction, defendants first invoke the familiar doctrine of exhaustion of administrative remedies. Pointing to the provisions of Title 48, § 79 et seq., Code of Alabama 1940, defendants assert that the appellate procedure therein provided is a part of the administrative process.

We do not agree. In Avery Freight Lines, Inc. v. Persons, 1947, 250 Ala. 40, 32 So.2d 886, 889, the Supreme Court of Alabama, in holding that an appeal to the Circuit Court under the statutes concerned was judicial and not legislative or administrative, observed: "Under the foregoing statutes * * * the circuit court can do only three things. (1) It can affirm the order of the Public Service Commission. (2) It can set aside the order of the Public Service Commission. (3) It can remand the case to the Public Service Commission for further proceedings in conformity with the direction of the court. The legislature evidently did not intend 'that the reviewing court should put itself in the place of the commission, try the matter anew as an administrative body, weigh the evidence and substitute its finding and judgment on the merits as that of the commission.' State ex rel. Anderson Motor Service Co. v. Public Service Commission, 234 Mo.App. 470, 134 S.W.2d 1069, 1076; Id., 348 Mo. 613, 154 S.W.2d 777; 51 C.J. p. 758. See Alabama Public Service Commission v. Crow, 247 Ala. 120, 22 So. 2d 721."

After discussing a similar statutory design for judicial review of administrative orders in Bacon, et al. Public Service Comm. of State of Vermont v. Rutland Railroad Co., 1914, 232 U.S. 134, 138, 34 S.Ct. 283, 284, 58 L.Ed. 538, the court said: "It is apparent on the face of these sections that they do not attempt to confer legislative powers upon the court. They only provide an alternative and more expeditious way of doing what might be done by a bill in equity. Whether the alternative is exclusive or concurrent, whether it opens matters that would not be open upon a bill or not, if exceptions are taken (which does not appear in this case), is immaterial; the remedy in any event is purely judicial: to exonerate the appellant from an order that exceeds the law. This, we understand, is the view taken by the supreme

1. Herkness v. Irion. Com'r of Conservation, et al., 1928, 278 U.S. 92, 49 S.Ct. 40, 73 L.Ed. 198; Ex parte Williams, Tax Com'r., 1928, 277 U.S. 267, 48 S. Ct. 523, 72 L.Ed. 877; Prendergast et al. v. New York Telephone Co., 1923, 262 U.S. 43, 43 S.Ct. 466, 67 L.Ed. 853; Louisville & N. R. Co. v. Railroad Comm. of Alabama, D.C.Ala.1913, 208 F. 35.

court of the state, Bacon v. Boston & Maine R. R., 83 Vt. 421, 457, 76 A. 128; Sabre v. Rutland R. R. Co., 86 Vt. 347, 368, 369, 85 A. 693, [Ann.Cas. 1915C, 1269]; and this being so, by the rule laid down in Prentis v. Atlantic Coast Line Co. [211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150], the railroad company was free to assert its rights in the district court of the United States."

We hold that defendant Commission's order denying plaintiff's petition terminated the administrative process, entitling plaintiff to resort immediately to this court for relief.[2] The failure of plaintiff to apply for a rehearing does not affect the result. Title 48, § 76, Code of Alabama 1940, permits an application for a rehearing before the Commission but does not require it. No Alabama case has been called to our attention, we have found none, holding that such an application must have been made before resorting to the statutory procedure for appeals to the State courts, to which we have referred. Moreover, in the absence of a statutory requirement making application for a rehearing a condition precedent to the right of judicial review, plaintiff was authorized to proceed in this court without first having availed itself of such a privilege.[3]

■■ There is no merit in defendants' insistence that plaintiff must perforce litigate the validity of the alleged confiscatory order in the State courts. Jurisdiction of this court has been invoked by facts properly pleaded. Plaintiff had a choice of forums. It could have prosecuted an appeal to the Circuit Court of Montgomery, Alabama, Title 48, § 79, Code of Alabama 1940, or it could have invoked the jurisdiction of this court in a plenary suit. We hold that, after the judicial stage is reached, a complainant alleging an order of a State commission to be confiscatory in violation of the Fourteenth Amendment may seek the protection of a Federal court even though the State law affords like procedure in the State courts.[4]

■■ Conceding *arguendo* its jurisdiction, defendants urge this court to abstain from its exercise both under the principle of comity between Federal and State courts and under the doctrine of discretionary abstention. But "rules of comity or convenience must give way to constitutional rights." Oklahoma Natural Gas Co. v. Russell, supra, 261 U.S. 290, 293, 43 S.Ct. 353, 354. Since no suit is pending at this time in any of the courts of the State of Alabama between the parties to, or involving the subject matter of, this litigation, we hold that rules of comity are inapplicable. Southern Railway Co. v. Alabama Public Service Comm., D.C.1950, 88 F.Supp. 441.

■■ There is ample authority to the effect that if questions of novel, ambiguous or undecided State law are involved in a pending action and it appears that a State court adjudication would decide or render

2. St. Louis-San Francisco Railway Co. v. Alabama Public Service Comm., 1929, 279 U.S. 560, 49 S.Ct. 383, 73 L.Ed. 843; Prendergast et al. v. New York Telephone Co., 1923, 262 U.S. 43, 43 S.Ct. 466, 67 L.Ed. 853; Bacon et al. Public Service Comm. of State of Vermont v. Rutland Railroad Co., 1914, 232 U.S. 134, 34 S.Ct. 283, 58 L.Ed. 538; Chicago, B. & O. R. Co. v. Illinois Commerce Comm., D.C.Ill.1949, 82 F.Supp. 368; Atlantic Coast Line R. Co. v. Public Service Comm. of South Carolina, D.C. S.C.1948, 77 F.Supp. 675.

3. Prendergast et al. v. New York Telephone Co., supra, note 2; Atlantic Coast Line R. Co. v. Public Service Comm. of South Carolina, supra, note 2.

4. Railroad & Warehouse Comm. of Minnesota v. Duluth Street Ry. Co., 1927,

273 U.S. 625, 47 S.Ct. 489, 71 L.Ed. 807; Pacific Telephone & Telegraph Co. v. Kuykendall, 1924, 265 U.S. 196, 44 S.Ct. 553, 68 L.Ed. 975; Prendergast v. New York Telephone Co., supra, note 2. Oklahoma Natural Gas Co. v. Russell, 1923, 261 U.S. 290, 43 S.Ct. 353, 67 L.Ed. 659; Detroit & Mackinac R. R. Co. v. Michigan R. R. Comm., 1914, 235 U.S. 402, 35 S.Ct. 126, 59 L.Ed. 288; Bacon v. Rutland Railroad Co., supra, note 2; Reagan v. Farmers' Loan & Trust Co., 1894, 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014; Central Kentucky Natural Gas Co. v. Railroad Comm. of Kentucky, D.C.1930, 37 F.2d 938; Union Light, Heat & Power Co. v. Railroad Comm., D.C.1926, 17 F. 2d 143; Van Wert Gaslight Co. v. Public Utilities Comm. of Ohio, D.C.1924, 299 F. 670.

986

unnecessary the decision of Federal questions, the Federal court should retain jurisdiction but withhold its decision pending determination of the matter by the State court with reasonable promptness.[5] We agree that the district court should stay its hand where the Federal question may not survive the decision of the State court as to the local law. But defendants cite no ambiguous, novel or undecided State law involved herein. The authority of the Commission to issue the order is not questioned. The statute under which it acted is not attacked. The Alabama law requires no definite construction or authoritative interpretation. Alabama Public Service Commission v. Atlantic Coast Line R. Co., Ala. Sup., 45 So.2d 449. We hold that the doctrine of discretionary abstention does not apply.

■ III. Maintaining that the allegations of the complaint afford no basis for injunctive relief in any event, defendants advert to the negative form of the Commission's order and assert that the effect of an injunction would be to interfere with the enforcement of State criminal statutes contrary to time-honored principles of equity.

It is conceded that the order is negative in form,[6] but its legal effect could hardly be more positive. Viewed against the statutory scheme adopted by the State to regulate transportation companies, such order is conclusive evidence that plaintiff has done all it could under the State law to get relief and could not get it. To save itself from irreparable damage it must violate the State's criminal law and submit to its sanctions if State officers do their duty. This, equity does not require. Stripped of artificiality, the order amounts to a stark command by the State that plaintiff continue to furnish the train services involved or suffer the consequences of their abandonment. In view of the findings of fact and conclusions of law, *infra*,[7] we hold that in its impact on plaintiff's business it is affirmative in nature, having the practical effect of confiscating plaintiff's property in violation of the Fourteenth Amendment, and that it is clearly not within the rule of the cases relied upon by defendants.[8]

■ Equally tenuous is defendants' contention that the injunction prayed for would restrain enforcement of the criminal laws of Alabama in an unwarranted manner. To impart reality to the protection afforded plaintiff by the Fourteenth Amendment it is essential that this court restrain defendants from seeking to impose the sanctions of fines, penalties and forfeitures provided in Title 48, Code of Alabama 1940. We are without jurisdiction to grant the relief which the Commission wrongfully withheld, namely, permission for plaintiff to abandon these train services. We are warranted in assuming that should we decline to interfere with the enforcement of the criminal laws of Alabama plaintiff would continue to operate these trains at a serious and growing loss, for while the threat of prosecution may be a goad, it is not the only inducement to law observance.

5. Shipman v. Du Pre, 1950, 339 U.S. 321, 70 S.Ct. 640, 94 L.Ed. —; Railroad Comm. of Texas v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; Burford v. Sun Oil Co., 1943, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424; Stainback v. Mo Hock Ke Lok Po, 1949, 336 U.S. 368, 69 S.Ct. 606, 93 L.Ed. 741; City of Chicago v. Fieldcrest Dairies, 1942, 316 U.S. 163, 62 S.Ct. 986, 86 L.Ed. 1355; A. F. L. v. Watson, 1946, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873; Township of Hillsborough v. Cromwell, 1945, 326 U.S. 620, 66 S.Ct. 53, 90 L.Ed. 415.

6. The report and order of the Commission, after a statement of the case and a finding adverse to the railroad concludes: "Premises considered, it is ordered by the commission that the petition of the Southern Railway Company filed on September 13, 1948, requesting authority to discontinue the operation of passenger trains Nos. 7 and 8, between Tuscumbia, Alabama, and Chattanooga, Tennessee, in so far as they are operated in the State of Alabama, be and it is hereby denied."

7. See Finding of Fact Nos. 15–38 and Conclusions of Law Nos. 11–17, infra.

8. Standard Oil Co. v. United States, 1931, 283 U.S. 235, 51 S.Ct. 429, 75 L.Ed. 999; Piedmont & No. Ry. Co. v. United States, 1930, 280 U.S. 469, 50 S.Ct. 192, 74 L.Ed. 551.

Thus, it is not the threat of a multiplicity of prosecutions, but the finding of irreparable damage to plaintiff's property rights that is real, not fanciful, immediate, not remote, which moves us to grant an injunction. We know of no other manner of affording the relief to which plaintiff is entitled.

Defendants rely heavily upon the following statement in Beal, County Attorney of Douglas County, Nebraska, et al. v. Missouri Pac. R. Corp., 1941, 312 U.S. 45, 61 S.Ct. 418, 420, 85 L.Ed. 577: "It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions. In re Sawyer, 124 U.S. 200, 211, 8 S.Ct. 482, 488, 31 L.Ed. 402; Davis & Farnum Mfg. Co. v. Los Angeles, 189 U.S. 207, 23 S.Ct. 498, 47 L.Ed. 778; Hygrade Provision Co. v. Sherman, 266 U.S. 497, 500, 45 S.Ct. 141, 69 L.Ed. 402. No citizen or member of the community is immune from prosecution, in good faith, for his alleged criminal acts. The imminence of such a prosecution even though alleged to be unauthorized and hence unlawful is not alone ground for relief in equity which exerts its extraordinary powers only to prevent irreparable injury to the plaintiff who seeks its aid. Terrace v. Thompson, 263 U.S. 197, 214, 44 S.Ct. 15, 17, 68 L.Ed. 255; Packard v. Banton, 264 U.S. 140, 143, 44 S.Ct. 257, 258, 68 L.Ed. 596; Tyson & Bro. [United Theatre Ticket Offices] v. Banton, 273 U. S. 418, 428, 47 S.Ct. 426, 427, 71 L.Ed. 718, 58 A.L.R. 1236; Cline v. Frink Dairy Co., 274 U.S. 445, 452, 47 S.Ct. 681, 682, 71 L.Ed. 1146." But is was also said in the Beal case, supra: "* * * that in view of the state of the record and certain concessions made by counsel on the argument here any further hearing of the issue of irreparable injury to respondent from a threatened multiplicity of suits has been waived. The reversal will accordingly be with instructions to the district court to dismiss the bill of complaint." In the case at bar there was no concession or waiver of any claim of irreparable injury resulting from a multiplicity of suits or the deprivation of property without due process of law.

▬ We hold that this case falls within the exception to the general rule and find apposite the following language in Cline v. Frink Dairy Co. [1927], 274 U.S. 445, 47 S.Ct. 681, 682, 71 L.Ed. 1146: "* * * The general rule is that a court of equity is without jurisdiction to restrain criminal proceedings to try the same right that is in issue before it; but an exception to this rule exists when the prevention of such prosecutions under alleged unconstitutional enactments is essential to the safeguarding of rights of property, and when the circumstances are exceptional and the danger of irreparable loss is both great and immediate. Fenner v. Boykin, 271 U.S. 240, 243, 46 S.Ct. 492, 70 L.Ed. 927; Packard v. Banton, 264 U.S. 140, 44 S.Ct. 257, 68 L. Ed. 596; Hygrade Provision Co. v. Sherman, 266 U.S. 497, 502, 45 S.Ct. 141, 69 L. Ed. 402; Terrace v. Thompson, 263 U.S. 197, 214, 44 S.Ct. 15, 68 L.Ed. 255; Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A., N.S., 932, 14 Ann.Cas. 764; Davis & Farnum Mfg. Co. v. Los Angeles, 189 U.S. 207, 218, 23 S.Ct. 498, 47 L.Ed. 778; Dobbins v. Los Angeles, 195 U.S. 223, 236, 241, 25 S.Ct. 18, 49 L.Ed. 169. In re Sawyer, 124 U.S. 200, 209, 211, 8 S.Ct. 482, 31 L.Ed. 402."

▬ Proceeding to the merits of the case, we hold that plaintiff is entitled to the relief for which it prays and enter the following findings of fact and conclusions of law:

### Findings of Fact

1. Plaintiff, Southern Railway Company, is a corporation organized and existing under the laws of the State of Virginia, is engaged as a common carrier by railroad of persons and property between points within the State of Alabama, and between points within the State of Alabama on the one hand and points in other states throughout the South on the other hand, and is subject to the jurisdiction of the Alabama Public Service Commission and the Interstate Commerce Commission, respectively.

2. The defendant, Alabama Public Service Commission, consisting of a president and two associate commissioners, is an administrative body created under the laws

of the State of Alabama, Title 48, § 1, Code of Alabama 1940, and thereby authorized to exercise certain regulatory powers over plaintiff, Title 48, § 106, Code of Alabama 1940. The principal office and official domicile of said Commission is located in the City of Montgomery, being within the Northern Division of the Middle Judicial District of the State of Alabama. Title 48, § 11, Code of Alabama 1940. Defendant Persons is President, and defendants Hitchcock and Owen are Associate Commissioners of said Commission and are citizens of the State of Alabama and residents of the City of Montgomery.

3. The defendant Carmichael is Attorney General for the State of Alabama, and is a citizen of the State of Alabama and resident of the City of Montgomery. Defendant Carmichael, as Attorney General of the State of Alabama, is by the statutes of said state charged with the supervision and control of legal proceedings in behalf of the State of Alabama and is attorney for defendant, Alabama Public Service Commission.

4. This is a suit of a civil nature between citizens of different states and arises under the Fourteenth Amendment to the Constitution of the United States. The matter in controversy, exclusive of interest and cost, exceeds the sum of $3,000.

5. Plaintiff complied with Title 48, §§ 35 and 106, Code of Alabama 1940, on the 13th day of September, 1948, by filing with defendant Commission an application for authority to discontinue the operation of two local intrastate passenger trains being operated daily between Tuscumbia, Alabama, and Chattanooga, Tennessee.

6. The defendant Commission set said application down for hearing at Huntsville, Alabama, for June 2, 1949. The hearing was continued by the Commission until August 4, 1949, and again until October 6, 1949, when it was heard by two representatives of the Commission, none of the defendant commissioners being present thereat.

7. On April 3, 1950, the Commission entered its report and order and denied plaintiff's application.

8. Plaintiff seeks a temporary and permanent injunction against the defendants, separately and severally, from proceeding to enforce sanctions provided under the laws of the State of Alabama for the failure or refusal of plaintiff to continue the operation of local passenger trains Nos. 7 and 8 within the State of Alabama in violation of order No. 11988, entered by defendant Commission April 3, 1950, and that said order be declared unlawful, null, void and of no effect.

9. On September 13, 1948, a notice was posted at each affected station in Alabama that plaintiff had petitioned the Alabama Public Service Commission for authority to discontinue local trains Nos. 7 and 8. These notices remained posted for a period of ten days in compliance with the rule of defendant Commission.

10. Local train No. 7 leaves Chattanooga, Tennessee, and makes scheduled or flag stops at the following towns in Alabama: Stevenson, Fackler, Hollywood, Scottsboro, Larkinsville, Limrock, Woodville, Paint Rock, Gurley, Brownsboro, Chase, Huntsville, Madison, Belle Mina, Decatur, Trinity, Hillsboro, Wheeler, Courtland, Town Creek, Leighton, and Sheffield-Tuscumbia. Local train No. 8 makes the same trip in reverse, starting at Sheffield-Tuscumbia and ending at Chattanooga, Tennessee.

11. Train No. 7 leaves Chattanooga, Tennessee, at 4:15 p. m. and arrives at Sheffield-Tuscumbia, Alabama, at 9:05 p. m. Train No. 8 leaves Sheffield-Tuscumbia, Alabama, at 5:55 a. m. and arrives at Chattanooga, Tennessee, at 10:50 a. m.

12. In addition to local trains Nos. 7 and 8, plaintiff operates trains Nos. 35 and 36, and trains Nos. 45 and 46 between Chattanooga, Tennessee, and Sheffield-Tuscumbia, Alabama. Train No. 35 leaves Chattanooga, Tennessee, at 7:00 a. m. and arrives at Sheffield-Tuscumbia, Alabama, at 12:20 p. m. Train No. 36 leaves Sheffield-Tuscumbia, Alabama, at 12:40 p. m. and arrives at Chattanooga, Tennessee, at 6:00 p. m. Train No. 45 leaves Chattanooga, Tennessee, at 11:50 p. m. and arrives at Sheffield-Tuscumbia, Alabama, at 4:10 a. m. Train No. 46 leaves Sheffield-Tuscumbia, Alabama, at 11:10 p. m. and arrives

at Chattanooga, Tennessee, at 3:10 a. m. Trains Nos. 35 and 36 make a scheduled stop or flag stop at the following towns in Alabama: Stevenson, Fackler, Hollywood, Scottsboro, Larkinsville, Limrock, Woodville, Paint Rock, Gurley, Brownsboro, Chase, Huntsville, Madison, Belle Mina, Decatur, Trinity, Hillsboro, Wheeler, Courtland, Town Creek, Leighton to Sheffield-Tuscumbia. Trains Nos. 45 and 46 make a scheduled stop or flag stop at Chattanooga, Tennessee, and the following towns in Alabama: Stevenson, Scottsboro, Huntsville, Decatur and Sheffield-Tuscumbia.

13. Odd number trains 7, 35 and 45 operate westbound from Chattanooga, Tennessee, to Sheffield-Tuscumbia, Alabama. Even number trains 8, 36 and 46 operate eastbound from Sheffield-Tuscumbia, Alabama, to Chattanooga, Tennessee. All six trains are operated daily and carry passengers, mail and express.

14. The passenger coaches used on trains Nos. 7 and 8 are of steel construction, electric lighted, steam heated, equipped with electric fans, flush toilets, window screens, drinking fountains and smoking compartment. The equipment is generally cleaned at Sheffield and Chattanooga, and repaired at Chattanooga.

15. It requires ten men to operate trains Nos. 7 and 8, five men in each direction. Each crew is composed of an engine crew of engineer and fireman and a train crew of conductor, flagman and baggageman. On Saturday and Sunday a porter is employed as an extra member on each train.

16. The few passengers that ride local trains Nos. 7 and 8 make a short-haul from one local town to another of about 5½ to 10 miles distance.

17. If trains Nos. 7 and 8 are discontinued, no station between Chattanooga, Tennessee, and Sheffield-Tuscumbia, Alabama, would be closed for that reason.

18. Statistical information concerning the operation of trains Nos. 7 and 8 for the twelve months ending February 29, 1948, shows that "actual" direct expenses ($87,524.05) very nearly approximate total gross revenue earned ($98,842.92). With "apportioned" direct expenses added, the twelve-months' operation resulted in an excess of direct expenses over total revenue of $78,710.74. Stated differently, the railway spent $1.80 to earn $1.00 of gross revenue.[9]

19. For the twelve-month period ending February 28, 1949, "actual" direct expenses ($90,993.77) exceeded total gross revenue ($79,956.27). With "apportioned" direct expenses added, direct expenses exceed total revenue by $102,326.93. Stated differently, the Railway paid out $2.28 to earn $1.00 of gross revenue.

20. For the five-month period ending July 31, 1949, "actual" direct expenses ($40,819.57) exceeded total gross revenue ($30,745.28). With "apportioned" direct expenses added, direct expenses exceeded total revenue by $53,692.56. The plaintiff railroad paid out $2.75 to earn $1.00 of gross revenue.

21. The average number of passengers on trains Nos. 7 and 8 per train mile decreased from 26.63 for the twelve months ending February 29, 1948, to 18.13 for the twelve months ending February 28, 1949, and to 13.92 for the five months ending July 31, 1949. The average number of passengers per train mile on all other Southern Railway passenger trains was 84.65 for the twelve months ending February 29, 1948, 76.30 for the twelve months ending February 28, 1949, and 67.93 for the five months ending July 31, 1949.

22. The average revenue from passen-

9. In these and the following computations the term "actual" direct expenses includes the wages for the train and engine crews, payroll tax, railroad retirement and unemployment insurance, train fuel and damage to livestock on the right of way. The term "apportioned" direct expenses includes engine house expenses, water, lubricants, supplies and repairs for passenger locomotives and train cars, costs of trackage over N. C. & S. L., and the Chattanooga station company expenses. Nothing was included for maintenance of way, track and structures, station, yard, all traffic expenses, general supervision, taxes except payroll, fixed charges, depreciation or return on investment.

gers per train mile for trains Nos. 7 and 8 decreased from 54.90 cents for the twelve months ending February 29, 1948, to 37.35 cents for the twelve months ending February 28, 1949, and to 29.22 cents for the five months ending July 31, 1949; this contrasts with all other Southern Railway passenger trains, with an average of 192.81 cents for the twelve months ending February 29, 1948, 195.92 cents for the twelve months ending February 28, 1949, and 183.67 cents for the five months ending July 31, 1949.

23. Plaintiff's operation of its entire passenger business for the period 1931–1941, inclusive, resulted in a net operating deficit of $55,262,779. For the period 1942–1945, inclusive, passenger operations produced a net operating income of $44,938,879. For the post-war years, 1946–1948, inclusive, passenger operations resulted in a net operating deficit of $20,796,189. However, for the same respective periods, plaintiff's net freight service operating income was as follows: for the years 1931–1941, inclusive, $233,815,273; for the years 1942–1945, inclusive, $97,305,303; for the years 1946–1948, inclusive, $90,631,088. By combining the results of passenger and freight service, it appears that plaintiff's net operating income was as follows: for the years 1931–1941, inclusive, $178,552,494; for the years 1942–1945, inclusive, $142,244,182; and for the years 1946–1948, inclusive, $69,834,899.

24. For each year 1936–1941, inclusive, plaintiff's operation of passenger service within the State of Alabama resulted in a net operating deficit, the total for such period having been $3,962,525. For each year 1942–1945, inclusive, there was a net operating income, the total for such period having been $2,946,758. For each year 1946–1948, inclusive, there was a net operating deficit, the total for such period having been $2,872,505. The plaintiff's operation of freight service within the State of Alabama resulted in the following: for the years 1936–1941, inclusive, a net operating income of $13,012,218; for the years 1942–1945, inclusive, a net operating income of $13,934,056; and, for the years 1946–1948,

inclusive, a net operating income of $10,667,882. Taking these two sets of figures together, the plaintiff's operation within the State of Alabama resulted in a net railway operating income from both passenger and freight service for the years 1936–1941, inclusive, of $9,049,693; for the years 1942–1945, inclusive, of $16,880,814, and for the years 1946–1948, inclusive, of $7,795,377.

25. Comparing 1948 with 1936, plaintiff's average receipts per passenger mile throughout its entire system increased 47%, whereas the average annual compensation per employee increased 109%, materials and supplies 134% and payroll taxes 1,344%.

26. For the Southern Railway Company as a whole, the average yearly gross revenue from passengers was: for the years 1921–1930, inclusive, $27,956,720; for the years 1931–1941, inclusive, $9,573,645; for the years 1942–1945, inclusive, $52,639,553; and for the years 1946–1948, inclusive, $25,195,733.

27. A comparison of the distribution of inter-city passenger traffic in the United States for the years 1926 and 1948 shows that in 1926 the steam roads handled 21.9%, in 1948 only 11.4%, a decrease of 48%. Private automobiles in 1926 transported 70.9%; in 1948, 79.7%, an increase of 12%. Busses transported 2.7% in 1926 and 6.6% in 1948, an increase of 144%.

28. For the year ending February 29, 1948, the daily average revenue from passengers on trains Nos. 7 and 8 was $180.94, whereas the daily average total of wages, payroll tax and fuel was $238.04. For the year ending February 28, 1949, the daily average revenue from passengers on trains Nos. 7 and 8 was $124.74, whereas the daily average total of wages, payroll tax and fuel was $276.19. For the five-month period, March 1, through July 31, 1949, the daily average revenue from passengers on trains Nos. 7 and 8 was $97.02, whereas the daily average total of wages, payroll tax and fuel was $265.26. For the eight-month period, August 1, 1949, through March 31, 1950, the daily average revenue

from passengers on trains Nos. 7 and 8 was $83.11, whereas the daily average total of wages, payroll tax and fuel was $278.57.

29. Prior to 1946, plaintiff operated a diesel-electric power unit, the "Joe Wheeler," on the run now served by trains Nos. 7 and 8, but after several years of experimentation, discontinued its operation because of the uneconomical results which obtained.

30. Plaintiff is not a common carrier of the United States mail. The collection and delivery of all mail is the function of the United States Government, exclusively.

31. The line of railroad traversed by trains Nos. 7 and 8 from Bridgeport, Alabama, to Sheffield-Tuscumbia, Alabama, is closely paralleled by hard surface highways and many of the communities along the railroad are located directly on important east-west highways. Several of the larger communities are also located on important north-south highways. The Lee Highway (U. S. No. 72) closely parallels the line of railroad from the Alabama-Tennessee state line to Huntsville, from which point the railroad runs southwesterly to Decatur, and then generally westerly to Tuscumbia. From Huntsville to Tuscumbia the line of railroad is closely paralleled by the Joe Wheeler Highway (Ala. No. 20).

32. The American Bus Lines operate thirteen round trips daily between Florence and Huntsville. Seven of these schedules operate easterly over State Highway No. 20 between Tuscumbia and Huntsville, while six schedules operate westerly from Huntsville to Tuscumbia, via State Highway No. 20. The remaining schedules, east and west, operate over U. S. Highway No. 72 via Athens. Some of these busses operate in through service between Memphis and Charlotte and Memphis and Asheville. Eight round trips are operated daily between Florence and Chattanooga. Not less than seventy busses arrive in or depart from Huntsville daily. Decatur is also served by the Southeastern Greyhound lines, operating nine round trips daily between Nashville and Birmingham.

33. The stops, in timetable order, populations and bus service available for each of the towns traversed by trains Nos. 7 and 8 between Stevenson and Sheffield-Tuscumbia are as follows:

(a) Bridgeport, an agency station (NC &StL) in an incorporated community with a population according to the 1940 federal census of 2031 (2124 in 1930): Located on U. S. Highway No. 72. Six busses daily between Florence and Chattanooga and seven busses daily between Chattanooga and Florence plus an additional round trip daily between Scottsboro and Chattanooga via American Bus Lines. Also served by daily trains of the N. C. & St. L. and other daily trains of Southern Railway Company.

(b) Stevenson, an agency station in an incorporated community with a population according to the 1940 federal census of 793 (733 in 1930): Located on U. S. Highway No. 72. Six busses daily between Florence and Chattanooga and seven busses daily between Chattanooga and Florence plus an additional round trip daily between Scottsboro and Chattanooga via American Bus Lines. Also served by daily trains of the N. C. & St. L. and other daily trains of the Southern Railway Co.

(c) Fackler, an agency station in an unincorporated community with an estimated population of 200 within sight of the stopping place: Located on gravel road about two miles from U. S. Highway No. 72. Also served by other daily trains of Southern Railway. Bus service along U. S. Highway No. 72.

(d) Hollywood, an agency station in an incorporated community with a population according to the 1940 federal census of 311 (274 in 1930): Located on gravel road about one mile from U. S. Highway No. 72. Bus service along U. S. Highway No. 72. Also served by other daily trains of Southern Railway.

(e) Scottsboro, an agency station in an incorporated community with a population according to the 1940 federal census of 2834 (2304 in 1930): Located at junction of U. S. Highway No. 72 and State Primary Highways Nos. 32 and 35. Eight busses daily in each direction between Florence and Huntsville and Chattanooga

via American Bus Lines. One bus daily in each direction between Scottsboro and Chattanooga via American Bus Lines. Two round trips daily between Scottsboro and Flat Rock via Northeast Alabama Bus Co. Inc. Four round trips daily between Ft. Payne and Guntersville via Northeast Alabama Bus Co. Inc. Also served by other daily trains of Southern Railway Co.

(f) Larkinsville, an agency station in an unincorporated community with an estimated population of 200 within sight of the stopping place: Located on U. S. Highway No. 72. Six busses daily in each direction between Florence and Chattanooga via American Bus Lines. Also served by other daily trains of Southern Railway Co.

(g) Limrock, a non-agency station in an unincorporated community with an estimated population of 50 within sight of the stopping place: Located on U. S. Highway No. 72. Six busses daily in each direction between Florence and Chattanooga via American Bus Lines. Also served by other daily trains of Southern Railway Co.

(h) Woodville, an agency station in an incorporated community with a population according to the 1940 federal census of 183 (196 in 1930): Located on U. S. Highway No. 72. Six busses daily in each direction between Florence and Chattanooga via American Bus Lines. Also flag stop for Southern Railway daily trains 35 and 36.

(i) Paint Rock, an agency station in an incorporated community with a population according to the 1940 federal census of 282 (320 in 1930): Located on U. S. Highway No. 72. Six busses daily in each direction between Florence and Chattanooga via American Bus Lines. Also served by daily Southern Railway trains 35 and 36.

(j) Gurley, an agency station in an unincorporated community with an estimated population of 500 within sight of the station: Located on U. S. Highway No. 72. Six busses daily in each direction between Florence and Chattanooga via American

Bus Lines. Also served by daily Southern Railway trains 35 and 36.

(k) Brownsboro, an agency station in an unincorporated community with an estimated population of 75 within sight of the stopping place: Located on hard surface road about six-tenths of a mile from U. S. Highway No. 72. Bus service along U. S. Highway No. 72. Also flag stop for daily Southern Railway trains 35 and 36.

(l) Chase, a joint agency station (with N. C. & St. L.) in an unincorporated community with an estimated population of 50 within sight of the stopping place: Flag stop for train No. 7 and regular stop for train No. 8. Located on hard surface road about two miles from U. S. Highway No. 72. Bus service along U. S. Highway No. 72 (Chase Road) between Florence and Chattanooga. Also bus service along unnumbered road between Huntsville and Shelbyville, Tenn., via Cherokee Motor Coach Lines. Also served by daily except Sunday, mixed trains of the N. C. & St. L. operating between Decherd, Tenn. and Huntsville, about 48 miles. Also flag stop for daily Southern Railway trains 35 and 36.

(m) Huntsville, an agency station in an incorporated community with a population according to the 1940 federal census of 13,050 (11,554 in 1930): Located at junction of U. S. Highways Nos. 24, 72 and 241 and State Primary Highway No. 20. Eight busses daily in each direction between Florence and Chattanooga via American Bus Lines. Thirteen busses daily in each direction between Florence and Huntsville (seven via Tuscumbia eastbound and six via Tuscumbia westbound—the remaining schedules via Athens) via American Bus Lines. Five busses daily in each direction from and to New Market (four each way from and to Winchester, Tenn.) via Cherokee Motor Coach Lines. Nine busses daily to and from Nashville, Tenn., via Crescent Stages, Inc. Eight busses daily to and from Montgomery, Ala., via Crescent Stages, Inc. Eleven busses daily to and from Anniston, Ala., via Crescent Stages, Inc. Nine busses daily to and from Sylacauga, Ala. (with connections

to and from Birmingham) via Crescent Stages, Inc. Also served by other daily trains of Southern Railway Co. Also served by daily, except Sunday, mixed trains of N. C. & St. L. between Decherd, Tenn. and Huntsville, about 48 miles.

(n) Madison, an agency station in an incorporated community with a population according to the 1940 federal census of 455 (431 in 1930): Located on State Highway No. 20. Seven busses daily between Florence-Decatur and Huntsville and six busses daily between Huntsville-Decatur and Florence via American Bus Lines. Connection at Huntsville from and to Chattanooga. Also served by daily Southern Railway trains 35 and 36.

(o) Belle Mina, an agency station in an unincorporated community with an estimated population of 200 within sight of the stopping place: Located on State Highway No. 20. Seven busses daily between Florence-Tuscumbia and Huntsville via Decatur and six busses daily between Huntsville and Tuscumbia-Florence via Decature via American Bus Lines. Also flag stop for daily Southern Railway trains 35 and 36.

(p) Decatur, an agency station in an incorporated community with a population according to the 1940 federal census of 16,604 (15,593 in 1930): Located at junction of U. S. Highway No. 31 and State Highways Nos. 20 and 24. Seven busses daily between Florence-Tuscumbia and Huntsville and six busses daily between Huntsville-Tuscumbia and Florence via American Bus Lines. Connections at Huntsville from and to Chattanooga. Three busses daily in each direction to and from Red Bay, Ala., via Red Bay Bus Lines. Four busses daily in each direction from and to Moulton, Ala., via Red Bay Bus Lines. Nine busses daily in each direction between Birmingham and Nashville via Southeastern Greyhound Lines. Also served by other daily Southern Railway trains in addition to daily I. & N. trains between Cincinnati-Birmingham and beyond.

(q) Trinity, a non-agency stop in an incorporated community with a population according to the 1940 federal census of 249 (208 in 1930): Located on hard surface road about one mile from State Highway No. 20. Bus service along State Highway No. 20 between Florence and Huntsville with connections at Huntsville to and from Chattanooga. Also flag stop for daily Southern Railway trains 35 and 36.

(r) Hillsboro, an agency station in an incorporated community with a population according to the 1940 federal census of 292 (240 in 1930): Located on hard surface road about one mile from State Highway No. 20. Bus service along State Highway No. 20 between Florence and Huntsville with connection at Huntsville from and to Chattanooga. Also flag stop for daily Southern Railway trains 35 and 36.

(s) Wheeler, a non-agency station with an estimated population of 100 within sight of the station: Located on State Highway No. 20. Seven busses daily between Florence and Huntsville and six busses daily between Huntsville and Florence via American Bus Lines with connections at Huntsville from and to Chattanooga. Also flag stop for daily Southern Railway trains 35 and 36.

(t) Courtland, an agency station in an incorporated community with a population according to the 1940 federal census of 454 (359 in 1930): Located on State Highway No. 20 near junction with State Highway No. 36, the latter highway connecting State Highways Nos. 20 and 24. Seven busses daily between Florence-Tuscumbia and Huntsville and six busses daily between Huntsville-Tuscumbia and Florence via American Bus Lines with connections at Huntsville to and from Chattanooga. Also served by daily Southern Railway trains 35 and 36.

(u) Town Creek, an agency station in an incorporated community with a population according to the 1940 federal census of 637 (427 in 1930): Located at junction of State Highway No. 20 and State Highway No. 101, the latter highway connecting State Highway No. 20 and U. S. Highway No. 72. Seven busses daily between Florence and Huntsville and six busses

daily between Huntsville and Florence via American Bus Lines. Also served by daily Southern Railway trains 35 and 36.

(v) Leighton, an agency station in an incorporated community with a population according to the 1940 federal census of 810 (670 in 1930): Located on State Highway No. 20. Seven busses daily between Florence-Tuscumbia and Huntsville and six busses daily between Huntsville and Tuscumbia-Florence via American Bus Lines with connections at Huntsville to and from Chattanooga. Also served by daily Southern Railway trains 35 and 36.

34. The motor vehicle registration in the State of Alabama for the year 1948 shows 391,704 automobiles, 3,859 busses and 137,511 trucks.

35. The number of inhabitants per registered automobile in the counties of Alabama through which trains Nos. 7 and 8 run are as follows: Colbert, 6.2; Lawrence, 11; Limestone, 8.8; Morgan, 7.5; Madison, 7.4; Jackson, 12.9; and, for the State of Alabama, the number of inhabitants per registered automobile is 7.8.

36. There is adequate highway motor freight service along the route traversed by trains Nos. 7 and 8, and each city or town is serviced by one or more of the following interstate highway motor freight carriers: Baggett Transportation Co., Birmingham-Huntsville Transport Inc., Fayetteville Transfer Co., Loo-Mac Freight Lines, Malone Freight Lines Inc., Martin Motor Express, Neely-Ross Motor Express Inc., North Alabama Motor Express Inc., Roadway Express Inc., Silver Fleet Motor Express, The Valley Truck Lines, Inc., Mohawk Motor Lines, Inc., Dixie-Ohio Express Co., Gordon's Transports Inc., Hoover Motor Express Co., Inc., McCullough & Sanderson, Inter-City Trucking Co., Meeks Motor Freight.

37. The passenger transportation revolution, resulting from the construction of a vast network of highways, improvement of the private automobile, and the availability of bus service, has transferred passenger transportation needs from the railroad to the highway.

38. The convenience of the private automobile and busses has outmoded local passenger trains Nos. 7 and 8 and caused them to become an undesirable form of transportation.

## Conclusions of Law

1. Plaintiff's suit arises under the Fourteenth Amendment to the United States Constitution and the matter in controversy exceeds, exclusive of interest and costs, the sum of $3,000.

2. This court has jurisdiction of the parties and of the subject matter.

3. The questions for decision present no unresolved question of State law.

4. Under the provisions of Title 48, §§ 35 and 106, Code of Alabama 1940, plaintiff is required to obtain a permit from Alabama Public Service Commission before discontinuing regularly scheduled passenger trains.

5. Defendants Persons, Hitchcock and Owen, as the President and Associate Commissioners of the Alabama Public Service Commission, are charged with the duty of regulating and controlling transportation companies, Title 48, § 104 et seq., Code of Alabama 1940.

6. Defendant Carmichael, as Attorney General of the State of Alabama, is charged with the duty of enforcing all orders of the Alabama Public Service Commission and the sanctions provided in Title 48, Code of Alabama 1940.

7. The Alabama Public Service Commission is charged with the duty of supervising, regulating and controlling all transportation companies doing business in the State in specified particulars, including the maintenance of such public service as may be reasonable and just. Title 48, § 104, Code of Alabama 1940.

8. In Alabama the duty to maintain such public service as may be reasonable and just is not imperative but is relative. "In order to justify a reduction of the service, the carrier is not required to show that the rate of return on the system requires the reduction, or that it would impede interstate commerce, but it is suffi-

cient if the reduced plan would supply such train service as the public necessities demand and require (cases cited)." Alabama Public Service Comm. v. Atlantic Coast Line R. Co., Ala.Sup.1950, 45 So.2d 449, 450.

9. Plaintiff is under no obligation to continue to offer a service which the public will not use, where the offer is a financial burden, and where it is unreasonable to demand its continuance. Thompson v. Boston & Maine R. R., 86 N.H. 204, 166 A. 249; Atlantic Coast Line R. Co. v. Public Service Comm. of South Carolina, supra; Alabama Public Service Comm. v. Atlantic Coast Line R. Co., supra.

10. The controlling criteria in determining whether local passenger trains may be discontinued are these: the character and population of the territory served, the public patronage, or lack of it, the facilities remaining, the expense of operation as compared with revenue from same, and the operations of the carrier as a whole. Atlantic Coast Line R. Co. v. Public Service Comm. of South Carolina, supra; Alabama Public Service Comm. v. Atlantic Coast Line R. Co., supra.

11. If plaintiff continues to operate local trains Nos. 7 and 8, it will suffer irreparable damage by expending sums grossly disproportionate to revenue in a situation where there is no public necessity or demand for such service.

12. If plaintiff fails to operate local trains Nos. 7 and 8, plaintiff will be subjected to irreparable loss by incurring liability under sanctions imposed by Title 48, Code of Alabama 1940, including §§ 110, 399, 400 and 405.

13. Plaintiff has no adequate remedy at law.

14. Plaintiff will suffer irreparable damage unless this court permanently enjoins defendants and their successors in office from seeking to impose the sanctions provided by Title 48, Code of Alabama 1940, upon discontinuance by plaintiff of operation of its passenger trains Nos. 7 and 8 between Tuscumbia, Alabama, and Chattanooga, Tennessee, in opposition to the order of the defendant Commission, Docket No. 11988, April 3, 1950.

15. Order No. 11988, of April 3, 1950, rendered by the defendant Commission denying plaintiff permission to discontinue local trains Nos. 7 and 8 is unjust, unreasonable and confiscatory and deprives plaintiff of its property without just compensation in violation of the Fourteenth Amendment to the Constitution of the United States since there is no longer public necessity for this service and plaintiff is operating at a large financial loss.

16. Plaintiff owes no common carrier obligation, either to the United States or to the General Public to transport the United States Mail.

17. Plaintiff is entitled to a permanent injunction enjoining defendants Alabama Public Service Commission, Gordon Persons, its President, Jimmy Hitchcock and C. C. Owen, Associate Commissioners, and A. A. Carmichael, Attorney General of the State of Alabama, together with the successors in office of each of them, and their agents, servants and attorneys from pursuing any of the remedies of mandamus, injunction, fine, forfeiture or penalty provided in Title 48, §§ 110, 399, 400 and 405, Code of Alabama 1940, or otherwise, for the purpose of compelling plaintiff to continue to operate local trains Nos. 7 and 8 between Sheffield-Tuscumbia, Alabama, and Chattanooga, Tennessee, pursuant to Title 48, §§ 35 and 106, Code of Alabama 1940, and the order of the Alabama Public Service Commission, Docket No. 11988, of April 3, 1950.