## HERKNESS v. IRION, COMMISSIONER OF CONSERVATION, ET AL.

No. 3. Argued October 8, 1928.—Decided November 19, 1928.

*Mr. John W. Davis,* with whom *Messrs. Maurice B. Saul, Joseph N. Ewing, Allen S. Olmsted, 2d,* and *Esmond Phelps* were on the brief, for appellant.

*Messrs. Percy Saint,* Attorney General of Louisiana, *W. H. Thompson,* Assistant Attorney General, and *Edward Rightor* submitted for appellees.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

This suit was brought in a federal court for Louisiana by Herkness, an owner of natural gas wells, to enjoin the

Commissioner of Conservation and the Attorney General of that State from interfering with the erection, on plaintiff's land, and the operation, of a factory for the manufacture of carbon black from natural gas. The bill alleges that a number of other persons are now engaged in that business and have been for many years with the sanction of the Department of Conservation; that it had been its practice to require persons about to engage in such manufacture to apply for a permit; that one of its rules declares unlawful the erection of such a factory without having first obtained one; that plaintiff was refused a permit; that the sole ground of refusal was the policy recently announced by the Commissioner not to issue a permit for the erection of any new carbon black plants and to gradually reduce the amount of gas which holders of permits to operate existing plants can utilize for that purpose; and that his policy has become a fixed rule of administration. The bill charges that the order refusing to issue a permit to the plaintiff is void, because in excess of the powers conferred by the statutes or which could be conferred under the constitution of the State; and also because it violates the due process clause and the equal protection clause of the Fourteenth Amendment. A restraining order and an interlocutory injunction, as well as a permanent injunction, were sought. There were adequate allegations of threatened irreparable injury.

The District Judge issued a restraining order. The hearing upon the application for an interlocutory injunction was had before three judges, under § 266 of the Judicial Code as amended; and the case was later submitted by agreement as upon final hearing. The court denied the injunction and dismissed the bill, 11 F. (2d) 386; but later granted a restraining order pending the appeal. As the bill challenged the validity under the Federal Constitution of an order of an administrative board of the State,

the District Court had jurisdiction under § 266, *Oklahoma Gas Co.* v. *Russell,* 261 U. S. 290, and this Court has jurisdiction on direct appeal. We have no occasion to consider any of the constitutional questions presented. For, in our opinion, the statutes do not purport to confer upon the Commissioner power to refuse a permit to a person able and willing to comply with the requirements prescribed by the statute. See *Greene* v. *Louisville & Interurban Railroad Co.,* 244 U. S. 499, 508; *Dawson* v. *Kentucky Distilleries Co.,* 255 U. S. 288, 295.

The conservation of natural resources has been the subject of much legislation in Louisiana.[1] The possible wastefulness of the use of natural gas in the manufacture of carbon black was recognized; and the Legislature dealt fully with this use by Act 252 of 1924, which, in effect, embodies the provisions of Act 91 of 1922. *State* v. *Thrift Oil & Gas Co.,* 162 La. 165, 193. No law declares such use necessarily wasteful. Nor has the State purported to confer upon the Commissioner power to refuse a permit to new concerns and to restrict the use to the persons already engaged in the manufacture of carbon black. On the contrary, the use is expressly sanctioned in § 1 of Act 91 of 1922, which declares, " that natural gas may be· used in the· manufacture of carbon black under the conditions as fixed and imposed by the provisions of " that Act. And it is to those conditions and the means of ensuring their observance that the other provisions of the Act relate. Section 2 thereof directs the Commissioner to determine " what percentage of consumption of natural gas produced by each gas well may be used in the manufacture of carbon black . . ., which percentage shall not be less than fifteen per cent. and not more

---

[1] Act 71 of 1906; Act 144 of 1908; Acts 172, 190, 196 and 283 of 1910; Act 127 of 1912; Acts 268 and 270 of 1918; Act 250 of 1920.

than twenty per cent. of the potential capacity of such well. . . ." By § 3 he is authorized to reduce the consumption of natural gas used in the manufacture of carbon black below that minimum "after promulgation for sixty days of an order to that effect, whenever [and only whenever] it is actually necessary to do so in obtaining an adequate supply of natural gas for domestic heating and lighting purposes in the State of Louisiana, and for manufacturing plants, industries and enterprises located and operated within the State of Louisiana, other than those engaged in the manufacture of carbon black. . . ." Other sections of the 1922 Act define the conditions under which natural gas can be burned into carbon black. There is not even a contention that a condition existed which would have authorized the issue of an order reducing the minimum percentage of use, pursuant to § 3 of Act 91 of 1922.

Many detailed provisions concerning permits for the building of plants to burn natural gas into carbon black were added by Act 252 of 1924. But the additional provisions, and the specific powers there conferred upon the Commissioner, deal only with regulation of the use. The legislation contemplates, not restriction of the use to existing plants, but the further issue of permits to all who will "completely abide by and comply with all the provisions of this Act, and with all the rules and regulations of the Commissioner of Conservation established under the provisions of the Act." § 5. And it expressly provides that "The authority given the Commissioner of Conservation by this Act shall in no sense be understood to supersede or nullify any of the provisions of this Act, or any other act of this State, but shall be cumulative and in aid thereof." § 11.

As it is clear that the refusal of the Commissioner was not justified by any statutory provision, we have no occasion to consider the limitations imposed by the constitu-

tion of the State upon discriminatory action [2] and upon delegation of legislative power to an executive department.[3]

*Reversed.*

---

[2] See *State of Louisiana* v. *Mahner,* 43 La. Ann. 496; *Town of Crowley* v. *West,* 52 La. Ann. 526, 533; *Town of Mandeville* v. *Band,* 111 La. 806; *State ex rel. Gallé* v. *New Orleans,* 113 La. 371; *New Orleans* v. *Palmisano,* 146 La. 518; *State ex rel. Dickson* v. *Harrison,* 161 La. 218.

[3] See *State* v. *Billot,* 154 La. 402; *State* v. *Thrift Oil & Gas Co.,* 162 La. 165.