# FLORIDA LIME AND AVOCADO GROWERS, INC., ET AL. *v.* JACOBSEN, DIRECTOR OF THE DEPARTMENT OF AGRICULTURE OF CALIFORNIA, ET AL.

No. 49.  Argued December 9–10, 1959.—Decided March 7, 1960.

74

*Isaac E. Ferguson* argued the cause and filed a brief for appellants.

*John Fourt,* Deputy Attorney General of California, argued the cause for appellees. With him on the brief was *Stanley Mosk,* Attorney General of California.

MR. JUSTICE WHITTAKER delivered the opinion of the Court.

Appellants, engaged in the business of growing, packing, and marketing in commerce, Florida avocados, brought this action in the District Court of the United States for the Northern District of California to enjoin respondents, state officers of California, from enforcing § 792 of the California Agricultural Code.[1]

Section 792 prohibits, among other things, the importation into or sale in California of avocados containing "less than 8 per cent of oil, by weight of the avocado excluding the skin and seed." The complaint alleged, *inter alia,* that the varieties of avocados grown in Florida do not normally, or at least not uniformly, contain at maturity as much as 8% of oil by weight; that in each year since 1954 appellants have shipped in interstate commerce, in full compliance with the Federal Agricultural Marketing Agreement Act of 1937 [2] and Florida Avocado Order No. 69 issued under that Act by the Secretary of Agriculture on June 11, 1954, Florida avocados into the State of California and have attempted to sell them there; that

---

[1] Deering's Agricultural Code of the State of California, 1950; c. 2, Div. 5, of West's Ann. California Agricultural Code.

[2] 50 Stat. 246, 7 U. S. C. § 601 *et seq.*

appellees, or their agents, have consistently barred the sale of appellants' avocados in California for failure uniformly to contain not less than 8% of oil by weight, resulting in denial to appellants of access to the California market, and forcing reshipment of the avocados to and their sale in other States, to the injury of appellants, all in violation of the Commerce and Equal Protection Clauses of the United States Constitution, as well as of the Federal Agricultural Marketing Agreement Act of 1937 and Florida Avocado Order No. 69 issued thereunder.

Inasmuch as the complaint alleged federal unconstitutionality of the California statute, appellants requested the convening of, and there was convened, a three-judge District Court pursuant to 28 U. S. C. § 2281 to hear the case. After hearing, the court concluded that, because appellants had not contested the validity of § 792 nor sought abatement of appellees' condemnation of the avocados in the California state courts, the case presented "no more than a mere prospect of interference posed by the bare existence of the law in question," and that it had "no authority to take jurisdiction [and was] left with no course other than to dismiss the action," which it did. 169 F. Supp. 774, 776. Appellants brought the case here on direct appeal under 28 U. S. C. § 1253, and we postponed the question of our jurisdiction to the hearing on the merits. 360 U. S. 915.

The first and principal question presented is whether this action is one required by § 2281 to be heard by a District Court of three judges and, hence, whether we have jurisdiction of this direct appeal under § 1253.

Section 2281 provides [3] that an injunction restraining the enforcement of a state statute may not be granted

---

[3] 28 U. S. C. § 2281 provides:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the

76

upon the ground of unconstitutionality of such statute "unless the application therefor is heard and determined by a district court of three judges . . . ," and § 1253 provides[4] that any order, granting or denying an injunction in any civil action required by any Act of Congress to be heard and determined by a District Court of three judges, may be appealed directly to this Court.

Appellees concede that if the complaint had attacked § 792 *solely* on the ground of conflict with the United States Constitution, the action would have been one required by § 2281 to be heard and determined by a District Court of three judges. But appellees contend that because the complaint also attacks § 792 on the ground of conflict with the Federal Agricultural Marketing Agreement Act of 1937 and the Secretary's Florida Avocado Order No. 69, it is possible that the action could be determined on the statutory rather than the constitutional ground, and, therefore, the action was not required to be heard by a District Court of three judges under § 2281 and, hence, a direct appeal does not lie to this Court under § 1253.

Section 2281 seems rather plainly to indicate a congressional intention to require an application for an injunction to be heard and determined by a court of three

action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

[4] 28 U. S. C. § 1253 provides:

"Except as otherwise provided by law, any party may appeal to the Supreme Court from an order granting or denying, after notice and hearing, an interlocutory or permanent injunction in any civil action, suit or proceeding required by any Act of Congress to be heard and determined by a district court of three judges."

judges in *any* case in which the injunction may be granted on grounds of federal unconstitutionality. The reason for this is quite clear. The impetus behind the first three-judge court statute was the decision in *Ex parte Young*, 209 U. S. 123 (1908), in which it was held that a federal court could enjoin a state officer from enforcing a state statute alleged to be unconstitutional, despite the prohibition of the Eleventh Amendment concerning suits against a State. Debate was immediately launched in the Senate with regard to cushioning the impact of the *Young* case, the principal concern being with the power thus activated in one federal judge to enjoin the operation or enforcement of state legislation on grounds of federal unconstitutionality.[5]

---

[5] In the Senate debates Senator Overman of North Carolina commented as follows:

"This measure proposes that whenever a petition is presented the circuit judge before whom it is presented shall, before granting the injunction, call in one circuit judge and one district judge or another circuit court judge, making three judges who shall pass upon the question of the injunction.

"We think, sir, that if this could be done it would allay much intense feeling in the States. As was said by Mr. Justice Harlan, in his dissenting opinion in the Minnesota case [*Ex parte Young*], we have come to a sad day when one subordinate Federal judge can enjoin the officer of a sovereign State from proceeding to enforce the laws of the State passed by the legislature of his own State, and thereby suspending for a time the laws of the State. . . . That being so, there being great feeling among the people of the States by reason of the fact that one Federal judge has tied the hands of a sovereign State and enjoined in this manner the great officer who is charged with the enforcement of the laws of the State, causing almost a revolution, as it did in my State, and in order to allay this feeling, if this substitute is adopted and three judges have to pass upon the question of the constitutionality of a State statute and three great judges say that the statute is unconstitutional, the officers of the State will be less inclined to resist the orders and decrees of our Federal courts. The people and the courts of the State are more inclined to abide by the decision of three judges than they would of one subordinate

The result of the debates on this subject was passage of a three-judge-court statute in 1910, 36 Stat. 557, which was codified as § 266 of the Judicial Code, 36 Stat. 1162.[6] This statute prohibited the granting of an interlocutory injunction against a state statute upon grounds of federal unconstitutionality unless the application for injunction was heard and determined by a court of three judges.

---

inferior Federal judge who simply upon petition or upon a hearing should tie the hands of a State officer from proceeding with the enforcement of the laws of his sovereign State. . . ." 42 Cong. Rec. 4847.

And Senator Bacon of Georgia remarked:

"The purpose of the bill is to throw additional safeguards around the exercise of the enormous powers claimed for the subordinate Federal courts. If these courts are to exercise the power of stopping the operation of the laws of a State and of punishing the officers of a State, then at least let it be done on notice and not hastily, and let there be the judgment of three judges to decide such questions, and not permit such dangerous power to one man.

"The necessity for this legislation is a very grave one. It is a most serious trouble which now exists—that by the action of one judge the machinery of State laws can be arrested. . . ." 42 Cong. Rec. 4853.

[6] Section 266 of the Judicial Code originally provided in pertinent part:

"No interlocutory injunction suspending or restraining the enforcement, operation, or execution of any statute of a State by restraining the action of any officer of such State in the enforcement or execution of such statute, shall be issued or granted by any justice of the Supreme Court, or by any district court of the United States, or by any judge thereof, or by any circuit judge acting as district judge, upon the ground of the unconstitutionality of such statute, unless the application for the same shall be presented to a justice of the Supreme Court of the United States, or to a circuit or district judge, and shall be heard and determined by three judges, of whom at least one shall be a justice of the Supreme Court, or a circuit judge, and the other two may be either circuit or district judges, and unless a majority of said three judges shall concur in granting such application. . . . An appeal may be taken direct to the Supreme Court of the United States from the order granting or denying, after notice and hearing, an interlocutory injunction in such case." 36 Stat. 1162.

The statute also contained its own provision for direct appeal to this Court from an order granting or denying an interlocutory injunction. The objective of § 266 was clearly articulated by Mr. Chief Justice Taft in *Cumberland Telephone & Telegraph Co.* v. *Louisiana Public Service Comm'n,* 260 U. S. 212:

> "The legislation was enacted for the manifest purpose of taking away the power of a single United States Judge, whether District Judge, Circuit Judge or Circuit Justice holding a District Court of the United States, to issue an interlocutory injunction against the execution of a state statute by a state officer or of an order of an administrative board of the State pursuant to a state statute, on the ground of the federal unconstitutionality of the statute. Pending the application for an interlocutory injunction, a single judge may grant a restraining order to be in force until the hearing of the application, but thereafter, so far as enjoining the state officers, his power is exhausted. The wording of the section leaves no doubt that Congress was by provisions *ex industria* seeking to make interference by interlocutory injunction from a federal court with the enforcement of state legislation, regularly enacted and in course of execution, a matter of the adequate hearing and the full deliberation which the presence of three judges, one of whom should be a Circuit Justice or Judge, was likely to secure. It was to prevent the improvident granting of such injunctions by a single judge, and the possible unnecessary conflict between federal and state authority always to be deprecated." 260 U. S., at 216.

In 1925, § 266 was amended to require a three-judge court for issuance of a permanent as well as an interlocutory injunction, and § 238 of the Judicial Code (a broad statute governing direct appeals to this Court from District

Courts) was amended, so far as here pertinent, to incorporate the provision for direct appeals to this Court from the orders of three-judge courts granting or denying an injunction in a § 266 case. 43 Stat. 938. Such is the present scheme of §§ 2281 and 1253.

With this background, it seems entirely clear that the central concern of Congress in 1910 was to prevent one federal judge from granting an interlocutory injunction against state legislation on grounds of federal unconstitutionality. And the 1925 amendment requiring a court of three judges for issuance of a permanent as well as an interlocutory injunction "was designed to end the anomalous situation in which a single judge might reconsider and decide questions already passed upon by three judges on the application for an interlocutory injunction." *Stratton* v. *St. Louis Southwestern R. Co.*, 282 U. S. 10, 14. Section 2281, read in the light of this background, seems clearly to require that when, in any action to enjoin enforcement of a state statute, the injunctive decree may issue on the ground of federal unconstitutionality of the state statute, the convening of a three-judge court is necessary; and the joining in the complaint of a nonconstitutional attack along with the constitutional one does not dispense with the necessity to convene such a court. To hold to the contrary would be to permit *one* federal district judge to enjoin enforcement of a state statute on the ground of federal unconstitutionality whenever a nonconstitutional ground of attack was also alleged, and this might well defeat the purpose of § 2281.

Cases in this Court since *Louisville & Nashville R. Co.* v. *Garrett*, 231 U. S. 298 (1913), have consistently adhered to the view that, in an injunction action challenging a state statute on substantial federal constitutional grounds, a three-judge court is required to be convened and has—just as we have on a direct appeal from its action—jurisdiction over *all* claims raised against the

statute.[7]  These cases represent an unmistakable recognition of the congressional policy to provide for a three-judge court whenever a state statute is sought to be enjoined on grounds of federal unconstitutionality, and this consideration must be controlling.[8]

---

[7] See, e. g., *Van Dyke* v. *Geary*, 244 U. S. 39; *Cavanaugh* v. *Looney*, 248 U. S. 453; *Lemke* v. *Homer Farmers Elevator Co.*, 258 U. S. 65 (*Lemke II*); *Chicago, Great Western R. Co.* v. *Kendall*, 266 U. S. 94; *Shafer* v. *Farmers Grain Co.*, 268 U. S. 189; *Herkness* v. *Irion*, 278 U. S. 92; *Sterling* v. *Constantin*, 287 U. S. 378; *Spielman Motor Sales Co.* v. *Dodge*, 295 U. S. 89; *Railroad Comm'n of California* v. *Pacific Gas & Electric Co.*, 302 U. S. 388; *Public Service Comm'n* v. *Brashear Freight Lines*, 312 U. S. 621; *Parker* v. *Brown*, 317 U. S. 341.

In the *Garrett* case, the following observations were made by Mr. Justice Hughes:

"Because of the Federal questions raised by the bill the Circuit [District] Court had jurisdiction and was authorized to determine all the questions in the case, local as well as Federal. *Siler* v. *Louisville & Nashville R. R.*, 213 U. S. 175, 191. A similar rule must be deemed to govern the application for preliminary injunction under the statute which requires a hearing before three judges, and authorizes an appeal to this court. 36 Stat. 557. This statute applies to cases in which the preliminary injunction is sought in order to restrain the enforcement of a state enactment upon the ground of its 'unconstitutionality.' The reference, undoubtedly, is to an asserted conflict with the Federal Constitution, and the question of unconstitutionality, in this sense, must be a substantial one. But, where such a question is presented, the application is within the provision, and this being so, it cannot be supposed that it was the intention of Congress to compel the exclusion of other grounds and thus to require a separate motion for preliminary injunction, and a separate hearing and appeal, with respect to the local questions which are involved in the case and would properly be the subject of consideration in determining the propriety of granting an injunction pending suit. The local questions arising under the state constitution and statutes were therefore before the Circuit [District] Court and the appeal brings them here." 231 U. S., at 303–304.

[8] In *Sterling* v. *Constantin*, 287 U. S. 378, for example, certain state administrative orders were sought to be enjoined on the ground that they violated both the State and Federal Constitutions. The

Appellees place some reliance on *Ex parte Buder*, 271 U. S. 461, and *Lemke* v. *Farmers Grain Co.*, 258 U. S. 50 (*Lemke I*), in support of their position. *Buder* held merely that a claim of conflict between a state statute and a federal statute was not a constitutional claim requiring the convening of a three-judge court under § 266, and thus there could be no direct appeal here. *Buder* did not, however, require that a constitutional claim be the sole claim before the three-judge court. *Lemke I* held that it was permissible to appeal to the Court of Appeals rather than directly to this Court from the final order of a single district judge in a case in which a state statute was attacked on the grounds that it was both unconstitutional

---

Governor of the State had declared martial law in an effort to enforce the orders, and his action was also challenged on the ground that any statute purporting to confer such authority on him was in violation of the State and Federal Constitutions. With regard to the jurisdiction of the three-judge court which had been convened for the purpose of considering an application for injunction, Mr. Chief Justice Hughes said:

"As the validity of provisions of the state constitution and statutes, if they could be deemed to authorize the action of the Governor, was challenged, the application for injunction was properly heard by three judges. *Stratton* v. *St. Louis Southwestern Ry. Co.*, 282 U. S. 10. The jurisdiction of the District Court so constituted, and of this Court upon appeal, extends to every question involved, whether of state or federal law, and enables the court to rest its judgment on the decision of such of the questions as in its opinion effectively dispose of the case." 287 U. S., at 393–394.

In *Phillips* v. *United States*, 312 U. S. 246, it was held that a suit by the United States to enjoin the action of a Governor in interfering with the construction of a state power project using federal funds was not within § 266 because the validity of a state statute or order had not been challenged. *Sterling* v. *Constantin* was distinguished on the ground that it involved an attempt to restrain the action of a Governor as part of a main objective to enjoin execution of certain administrative orders as violative of the State and Federal Constitutions. As such, *Sterling* was said to have been "indubitably within § 266." 312 U. S., at 253.

and in conflict with a federal statute. The case was decided under § 238, which, until 1925, was a broad statute calling for a direct appeal to this Court from the action of a District Court "in any case that involves the construction or application of the Constitution of the United States . . . and in any case in which the constitution or law of a State is claimed to be in contravention of the Constitution of the United States." The breadth of § 238 had led the Court on several occasions to construe this provision to mean that a direct appeal to this Court was required only when the *sole* ground of District Court jurisdiction was the federal constitutional claim involved, *Union & Planters' Bank* v. *Memphis,* 189 U. S. 71, 73; *Carolina Glass Co.* v. *South Carolina,* 240 U. S. 305, 318, but if jurisdiction was based both on a constitutional ground and some other federal ground the appeal might properly be taken either to this Court or to the Court of Appeals. *Spreckels Sugar Refining Co.* v. *McClain,* 192 U. S. 397, 407–408; *Macfadden* v. *United States,* 213 U. S. 288, 293. *Lemke I,* decided in 1922, merely followed this line of decisions, and was not in any way concerned with a direct appeal to this Court under § 266 from the order of a three-judge court—the question now before us.

The distinction between the scope of our direct appellate jurisdiction under § 238 and § 266 prior to 1925 was effectively illustrated by the differing course of events in *Lemke I* and *Lemke* v. *Homer Farmers Elevator Co.,* 258 U. S. 65 (*Lemke II*). Both cases involved an attack on a state statute on grounds of federal unconstitutionality and conflict with a federal statute. In both, interlocutory injunctions were sought before three-judge courts, and the injunctions were granted. *Lemke I,* however, also sought a permanent injunction before a single district judge, and, from his order denying the injunction, the case was appealed to the Court of Appeals before coming here. *Lemke II,* on the other hand, was directly

appealed to this Court under § 266 from the interlocutory order of the three-judge court. As indicated, this Court held that the final order of the single judge in *Lemke I* was properly appealed to the Court of Appeals *under § 238* because of the additional nonconstitutional basis for District Court jurisdiction. But in *Lemke II* this Court took jurisdiction over all issues presented in the direct appeal *under § 266* from the interlocutory order of the three-judge court. See also *Shafer* v. *Farmers Grain Co.,* 268 U. S. 189, a case virtually identical with *Lemke II,* in which this Court also took jurisdiction over all questions in a § 266 direct appeal from an interlocutory injunction granted by a three-judge court.

The problem was greatly simplified in 1925 when § 266 was amended to require three-judge courts for the granting of both interlocutory and permanent injunctions on grounds of federal unconstitutionality, and § 238, while substantially amended to reduce the scope of our general appellate jurisdiction, so far as here pertinent, merely incorporated the provision for direct appeals to this Court from injunctions granted or denied under § 266. We do not find in these amendments any intention to curtail either the jurisdiction of three-judge courts or our jurisdiction on direct appeal from their orders. Indeed, the cases since 1925 have continued to maintain the view that if the constitutional claim against the state statute. is substantial, a three-judge court is required to be convened and has jurisdiction, as do we on direct appeal, over *all* grounds of attack against the statute. *E. g., Sterling* v. *Constantin,* 287 U. S. 378, 393–394; *Railroad Comm'n of California* v. *Pacific Gas & Electric Co.,* 302 U. S. 388, 391; *Public Service Comm'n* v. *Brashear Freight Lines,* 312 U. S. 621, 625, n. 5.

To hold that only one judge may hear and decide an action to enjoin the enforcement of a state statute on both constitutional and nonconstitutional grounds would be

to ignore the explicit language and manifest purpose of § 2281, which is to provide for a three-judge court whenever an injunction sought against a state statute may be granted on federal constitutional grounds. Where a complaint seeks to enjoin a state statute on substantial grounds of federal unconstitutionality, then even though nonconstitutional grounds of attack are also alleged, we think the case is one that is *"required* by . . . Act of Congress to be heard and determined by a district court of *three* judges." 28 U. S. C. § 1253. (Emphasis added.) We, therefore, hold that we have jurisdiction of this direct appeal.

We turn now to the merits. The Court is of the view that the District Court was in error in holding that, because appellants had not contested the validity of § 792 nor sought abatement of appellees' condemnation of their avocados, there was no "existing dispute as to present legal rights," but only "a mere prospect of interference posed by the bare existence of the law in question [§ 792]," and in accordingly dismissing the action for want of jurisdiction. As earlier stated, the complaint alleges that, since the issuance of the Secretary's Florida Avocado Order No. 69 in 1954, appellants have made more than a score of shipments in interstate commerce of Florida avocados to and for sale in California, and appellees, or their agents, have in effect consistently condemned those avocados for failure to contain 8% or more of oil by weight, thus requiring appellants—to prevent destruction and complete loss of their shipments—to reship the avocados to and sell them in other States, all in violation of the Commerce and Equal Protection Clauses of the United States Constitution as well as the Marketing Agreement Act of 1937. It is therefore evident that there is an existing dispute between the parties as to present legal rights amounting to a justiciable controversy which appellants are entitled to have determined on the

merits. In these circumstances, the fact that appellants did not contest the validity of § 792 nor seek abatement of appellees' condemnation of the avocados in the California state courts—which, because of the time period necessarily involved, would have resulted in the complete spoilage and loss of the product—does not constitute an impediment to their right to seek an injunction in the federal court against enforcement of § 792 on the ground that it violates both the Constitution of the United States and the Federal Agricultural Marketing Agreement Act of 1937.

The judgment is therefore reversed and the cause is remanded to the District Court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE DOUGLAS joins in the part of the opinion that passes on the merits, the Court having held, contrary to his view, that the case is properly here on direct appeal from a three-judge court.

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE DOUGLAS joins, dissenting.

The statute providing for three-judge Federal District Courts, with direct appeal to this Court, in cases seeking interlocutory injunctions against the operation of state statutes on constitutional grounds, was enacted in 1910. 36 Stat. 557. It was amended in 1925 to apply to applications for final as well as interlocutory injunctive relief. 43 Stat. 938. Since that time this Court has taken jurisdiction by way of direct appeal in several cases like the present one, where a state statute was sought to be enjoined both on federal constitutional and non-constitutional grounds. See *Herkness* v. *Irion*, 278 U. S. 92; *Sterling* v. *Constantin*, 287 U. S. 378, 393 (limited in *Phil-*

*lips* v. *United States*, 312 U. S. 246); *Spielman Motor Sales Co.* v. *Dodge*, 295 U. S. 89; *Parker* v. *Brown*, 317 U. S. 341.[1] In none of these cases, however, was our jurisdiction challenged by the litigants because non-constitutional as well as constitutional relief was sought, nor did the Court notice the existence of a question as to our jurisdiction on that score. We should therefore feel free to apply Mr. Chief Justice Marshall's approach in a similar situation to unconsidered assumptions of jurisdiction: "No question was made, in that case, as to the jurisdiction. It passed *sub silentio,* and the court does not consider

---

[1] Prior to the 1925 extension of this three-judge-court statute to cover applications for final injunctions, there were also cases like the present one, where non-constitutional as well as constitutional claims were made, in which the Court accepted jurisdiction. See *Louisville & Nashville R. Co.* v. *Garrett,* 231 U. S. 298; *Lemke* v. *Homer Farmers Elevator Co.,* 258 U. S. 65 (*Lemke II*); *Cavanaugh* v. *Looney,* 248 U. S. 453; *Shafer* v. *Farmers Grain Co.,* 268 U. S. 189. Of these cases, only *Louisville & Nashville R. Co.* v. *Garrett* gave any attention whatsoever to jurisdictional considerations, and in that case there was no direct challenge to this Court's jurisdiction of the whole case under the three-judge statute on the ground that non-constitutional as well as constitutional claims were made. But there is an even more fundamental reason for discounting these pre-1925 cases as authority regarding the jurisdictional problem in the present case. As *Garrett* and these other cases were decided prior to the 1925 Jurisdictional Act, which drastically shrunk this Court's jurisdiction on appeal, they arose at a time when the scope of direct appellate jurisdiction here over decisions of ordinary one-judge District Courts was much broader than it now is, and in fact applied under § 238 of the Judicial Code to all constitutional cases, including cases like the present one involving federal statutory grounds for relief in addition to constitutional grounds. See *Spreckels Sugar Refining Co.* v. *McClain,* 192 U. S. 397, 407–408; *Macfadden* v. *United States,* 213 U. S. 288. Thus the results in these pre-1925 cases, permitting the same scope of direct appeal to this Court in three-judge cases as § 238 then permitted in one-judge cases, were not as obviously out of harmony with the scheme of the federal judicial system in their day as I believe is the decision which the Court makes today.

itself as bound by that case." *United States* v. *More,* 3 Cranch 159, 172. See also Mr. Chief Justice Marshall in *Durousseau* v. *United States,* 6 Cranch 307, and Mr. Justice Brandeis dissenting in *King Mfg. Co.* v. *Augusta,* 277 U. S. 100, 135, n. 21: "It is well settled that the exercise of jurisdiction under such circumstances [where counsel did not question our jurisdiction] is not to be deemed a precedent when the question is finally brought before us for determination." [2] I therefore approach the question of our jurisdiction in the present case as open, calling for a thorough canvass of the relevant jurisdictional factors. The Court does not undertake such a canvass, but relies instead upon the cases cited and upon what it deems explicit statutory language and plainly manifested congressional intent. Consideration of what are to me the relevant factors leads me to dissent from the Court's conclusion that we have direct appellate jurisdiction in this case.

Appellants' complaint seeks injunction against the operation of § 792 of the California Agricultural Code on the grounds that it is in conflict with the Federal Agricultural Marketing Agreement Act of 1937, 7 U. S. C. § 601 *et seq.,* and the Commerce and Equal Protection Clauses of the United States Constitution. The complaint requested the convening of a three-judge District Court to adjudicate these claims. A three-judge court was convened and, after hearing, it entered a judgment dismissing the action on the ground that no justiciable controversy existed. 169 F. Supp. 774. A direct appeal was taken to this Court pursuant to 28 U. S. C. § 1253. The Court now holds that three judges were required to adjudicate appel-

---

[2] The Court's Rules 15, par. 1 (c) (1) and 23, par. 1 (c) emphasize the doctrine that a *sub silentio* exercise of jurisdiction is not controlling as precedent: "Only the questions set forth in the jurisdictional statement [or petition] or fairly comprised therein will be considered by the court."

lants' claims below and that we therefore have jurisdiction to decide this appeal on its merits.

The statute governing our direct appellate jurisdiction from decisions of three-judge District Courts is 28 U. S. C. § 1253:

> "Except as otherwise provided by law, any party may appeal to the Supreme Court from an order granting or denying, after notice and hearing, an interlocutory or permanent injunction in any civil action, suit or proceeding required by any Act of Congress to be heard and determined by a district court of three judges."

Whether the present case was a "proceeding required . . . to be heard and determined by a district court of three judges," and therefore within our direct appellate jurisdiction, depends upon the meaning to be given to 28 U. S. C. § 2281:

> "An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

I start with the proposition, as I understand the Court to do, that whether a case is one directly appealable here under 28 U. S. C. § 1253 depends upon the complaint, and not upon the result in the District Court. If three judges are required to hear the claims which are made, then we have direct appellate jurisdiction to review their decision, even though it be on non-constitutional grounds. If three

judges are not required in view of the complaint, and the case is determinable by a single judge, we have no jurisdiction by way of direct appeal under § 1253, even though the decision be a constitutional one.

In this case the complaint did not attack the California statute solely on the ground of its conflict with the Commerce and Equal Protection Clauses of the Constitution. It also attacked it because of its asserted conflict with the Federal Agricultural Marketing Agreement Act of 1937, a claim which in the first instance requires construction of both the Federal Act and the California statute, and which for purposes relevant to our issue is not a constitutional claim. *Ex parte Buder,* 271 U. S. 461. The question thus presented is whether three judges are to be required, with a consequent direct appeal to this Court, merely because a constitutional claim is made, although it is joined with claims that may dispose of the case on essentially statutory and perchance local statutory grounds. The Court decides that three judges are required in such a case. I would hold that there are required to be three judges and a direct appeal to this Court only when the exclusive ground of attack upon a state statute is direct and immediate collision with the Constitution, thus seeking a constitutional decision in order that relief be granted.

Neither my position nor the Court's is entirely satisfactory. My view would leave it open for a single district judge to enjoin a state statute on the ground of its unconstitutionality if the complaint also contains non-constitutional grounds for relief. As the Court points out, such a result would conflict with the superficial literal sense of 28 U. S. C. § 2281 that an "injunction restraining the enforcement . . . of any State statute . . . shall not be granted by any district court . . . upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of

three judges . . . ." The effect of the Court's decision, on the other hand, is to require the convening of a three-judge court, with the corollary right of direct appeal of its decision to this Court, in cases where, as a consequence of the presence of a substantial non-constitutional ground for relief, the constitutionality of a state statute will play no part in the decision, either in the District Court or in this Court. There can be expected to be many such cases. For an example of one of them see *Herkness* v. *Irion,* 278 U. S. 92. It can fairly be stated, and with this I understand the Court fully to agree, that in devising the three-judge District Court scheme relating to state legislation Congress was concerned with providing appropriate safeguards against the invalidation of state legislation on constitutional grounds. I am therefore put to a choice between holding this three-judge procedure applicable to a large class of non-constitutional cases, where the unusual demands which that procedure makes upon the federal judicial system were never thought justifiable by Congress, and departing from the strictly literal sense of § 2281 in order to restrict the scope of this three-judge procedure with a view to preventing its operation outside of its proper constitutional sphere. I am led to choose the latter by considerations which are to me controlling, namely, considerations bearing on the efficient operation of the federal judicial system. For I do not find myself compelled to disregard these considerations either by ironclad statutory language or by any unambiguous evidence of congressional purpose to the contrary.

What jurisdictional result in a case like this is most likely to comport best with the operation of the federal judicial system is to be determined with regard to two general and conflicting considerations, both of which are directly relevant to a construction of the provisions respecting three-judge District Courts in the context of the present situation. On the one hand is the policy

which gave rise to the creation of the three-judge require-
ment in these cases: protection against the improvident
invalidation of state regulatory legislation was sought
to be achieved by resting the fate of such legislation
in the first instance in the hands of three judges, one
of whom must be a circuit judge (or, originally, a Jus-
tice of this Court), rather than in a single district judge.
See Pogue, State Determination of State Law, 41 Harv.
L. Rev. 623; Hutcheson, A Case for Three Judges,
47 Harv. L. Rev. 795. And direct appeal to this Court
was provided, instead of the usual route from District
Court to Court of Appeals, not only to avoid the incon-
gruity of three judges reviewing three judges, but also to
hasten ultimate determination of the validity of the
legislation and to avoid the delay and waste of time dur-
ing which the operation of legislation eventually held
to be valid might be restrained on constitutional grounds
by injunction.

Were only these considerations claiming judgment in
construing inert language it would plainly follow, as the
Court has concluded, that three judges are required to
hear the complaint in this case, for constitutional claims
are made and it is not precluded that injunctive relief
may be granted on an obvious conflict with specific con-
stitutional provisions. But so to rule here is in my view
to fail to give due regard to countervailing considerations
of far-reaching consequences to the federal judicial sys-
tem, affecting the functioning of district and circuit
courts, as well as of this Court. Specifically, the conven-
ing of a three-judge trial court makes for dislocation of
the normal structure and functioning of the lower federal
courts, particularly in the vast non-metropolitan regions;
and direct review of District Court judgments by this
Court not only expands this Court's obligatory jurisdic-
tion but contradicts the dominant principle of having this
Court review decisions only after they have gone through

two judicial sieves, or, in the case of federal regulatory legislation, through the administrative tribunal and a Court of Appeals. Also, where issues of local law have to be adjudicated before reaching questions under the United States Constitution, the desirability of having the appropriate Court of Appeals adjudicate such local issues becomes operative.

I deem regard for these demands which the three-judge requirement makes upon the federal judiciary to be the jurisdictional consideration of principal importance in a case such as this where a claim is seriously urged which necessarily involves, certainly in the first instance, construction of local or federal statutes, thus making potentially available a non-constitutional ground on which the case may be disposed of. It is more important that the ordinary operation of our judicial system not be needlessly disrupted by such a case than it is to insure that every case which may turn out to be constitutional be heard by three judges. I am led therefore to construe strictly the statutes providing the three-judge procedure relevant to this case so as to permit their invocation only when the claim is solely constitutional, thus tending to insure that the three-judge procedure will not be extended to non-constitutional cases not within its proper sphere.

My adherence to such confining construction of the necessity both for convening three judges and for this Court to be the first appellate tribunal is consistent with the approach this Court has taken when it has in the past refused to apply this legislation. See *Moore* v. *Fidelity & Deposit Co.,* 272 U. S. 317; *Smith* v. *Wilson,* 273 U. S. 388; *Ex parte Collins,* 277 U. S. 565; *Oklahoma Gas Co.* v. *Packing Co.,* 292 U. S. 386; *Ex parte Williams,* 277 U. S. 267; *Ex parte Public National Bank,* 278 U. S. 101; *Rorick* v. *Board of Commissioners,* 307 U. S. 208; *Ex parte Bransford,* 310 U. S. 354; *Wilentz* v. *Sovereign Camp,* 306 U. S. 573; *Phillips* v. *United States,* 312 U. S.

246; *Stainback* v. *Mo Hock Ke Lok Po,* 336 U. S. 368. As we stressed in *Phillips* v. *United States, supra,* these cases approach this three-judge statute as a procedural technicality and not as the embodiment of a more or less broadly phrased social policy the enforcement of which requires a generous regard for some underlying social purpose. In *Stainback* v. *Mo Hock Ke Lok Po, supra,* we continued to refer to "the long-established rule of strict construction" of this provision for three judges, 336 U. S., at 378, and refused to find it applicable to the Territory of Hawaii. These cases recognize what the Court today in my view does not—that in giving scope to the three-judge requirement due regard should be given to the consequences to the effective functioning of the federal judiciary as a totality, especially to the fact that an expansive construction of the three-judge requirement increases the scope of this Court's direct review and thereby is at cross purposes with the Act of February 13, 1925, 43 Stat. 936, the primary aim of which was to keep our appellate docket within narrow confines. See *Moore* v. *Fidelity & Deposit Co.,* 272 U. S. 317, 321.

As against the result to which I am led by these important considerations bearing on the proper functioning of the federal judicial system, which I do not understand the Court to dispute, I cannot be persuaded, as apparently the Court is, by arguments stemming from "the explicit language," the literal sense, of 28 U. S. C. § 2281. Jurisdictional provisions are not to be read in isolation with mutilating literalness, but as harmonizing parts of the comprehensive, reticulated judicial system. For an instance of this Court's express refusal to give the surface literal meaning to a jurisdictional provision on the ground that to do so would not be consistent with the "sense of the thing" and would confer upon this Court a jurisdiction beyond what "naturally and properly belongs to it,"

see *American Security & Trust Co.* v. *Commissioners,* 224 U. S. 491, 495. And see *Ex parte Collins,* 277 U. S. 565, 568, where "[d]espite the generality of the language" of this three-judge provision, it was held that a suit was not one to restrain the operation of a state statute when "the defendants are local officers and the suit involves matters of interest only to the particular municipality or district involved." Reliance upon literalism in construing a jurisdictional statute constitutes slavish adherence to words, as though they were symbols having single, absolute meanings, and reflects indifference to the significance of jurisdictional legislation as a vehicle for judicial administration.

Nor am I persuaded that I must decide contrary to what are to me the considerations of proper judicial administration by what seems chiefly to have persuaded the Court, namely, that § 2281 "plainly . . . indicate[s] a congressional intention to require an application for an injunction to be heard and determined by a court of three judges in *any* case in which the injunction may be granted on grounds of federal unconstitutionality." (Pp. 76–77 of the Court's opinion.) I can find no such plain congressional intention with regard to the problem presented by the present case. When the three-judge statute was first passed by Congress in 1910 it applied only to applications for interlocutory injunctions. Jurisdiction remained in a single judge to hear an application for a final injunction against the operation of a state statute on grounds of unconstitutionality, and a single judge had the power to grant such an injunction. Thus it is impossible to attribute to Congress at that time an intention that *any* case involving an injunction of a state statute on constitutional grounds be heard and determined by three judges. The concern was only with improvident interlocutory relief. And in 1925, when the three-judge statute was extended to include applications for final as well as inter-

locutory relief, the only evident concern of Congress was, as the Court agrees, "to end the anomalous situation in which a single judge might reconsider and decide questions already passed upon by three judges on the application for an interlocutory injunction." *Stratton* v. *St. Louis Southwestern R. Co.*, 282 U. S. 10, 14. It is, of course, common knowledge that Congress' central concern in enacting the Jurisdictional Act of 1925 was to restrict the obligatory appellate jurisdiction of this Court. Thus, although the result of the 1910 and 1925 Acts is language which on its face appears to prohibit one judge from ever enjoining a state statute on constitutional grounds, I do not think it fair to say that there was ever a deliberate accompanying purpose in Congress to achieve such a sweeping inflexible result. In the absence of any manifestations of such a purpose, I do not see why we should attribute to Congress, as the Court does, an intention to achieve a result which to me is plainly out of harmony with the best operation of the federal judicial system.[3]

And if we are to look to our prior decisions for guidance with regard to the proper approach to statutes conferring upon this Court direct appellate jurisdiction over decisions in constitutional cases, I find much more relevant than the decisions relied upon by the Court, which reached the Court's result without consideration of the jurisdictional problems now presented, our decisions in *Ex parte Buder*, 271 U. S. 461, and in *Lemke* v. *Farmers Grain Co.*, 258 U. S. 50 (*Lemke I*). *Buder* arose under the

---

[3] It is interesting to note that while the Judicial Code also contains a provision requiring three judges to hear cases seeking injunctions against federal statutes on constitutional grounds (28 U. S. C. § 2282), Congress has left no room for doubt that in litigation attacking federal statutes if in fact (where the United States or one of its agents is a party) a federal statute is declared unconstitutional, the case is to be directly reviewed here. 28 U. S. C. § 1252 so provides.

three-judge statute involved in the present case, and *Lemke I* arose under § 238 of the old Judicial Code which, no less literally than the statute in the present case, gave this Court direct appellate jurisdiction in cases in which a state law was "claimed to be in contravention of the Constitution of the United States." In both of these cases the jurisdictional problem was expressly considered, and the jurisdictional legislation was read so as not to require this Court's direct appellate jurisdiction in cases where non-constitutional claims were made, even though constitutional factors were also implicated and decision might ultimately have turned on constitutional grounds.

Legislating is for Congress. Applying what Congress has enacted requires oftener than not construction. That is a judicial function. This is particularly true of judiciary legislation which is mainly concerned with the distribution of judicial power through deployment of the judicial force and the effective exercise of appellate review. It is also true to state that Congress seldom concerns itself with this Court's decisions construing judiciary legislation unless some dramatic result arouses its interest. We do not have to go further for an illustration of this generalization than to notice the indifference of Congress, in the sense that no legislative changes have been proposed one way or the other, with regard to the Act involved in this case, or the Criminal Appeals Act of 1907. Because these things are true I am convinced that it would in no wise show a disregard for any legislative purpose in the enactment of the three-judge device, or for any kind of legislative attitude toward the series of cases in which this Court has since then applied that legislation, if now upon full consideration we were to construe this legislation in light of the demands of the federal system as a totality to restrict it to what was plainly the central concern of Congress, to wit, to those cases where state legislation is

challenged *simpliciter* as directly offensive to some specific provision of the Constitution and where the claim is not entangled with other claims, usually turning upon the construction of local or federal statutes, which necessarily must be passed upon before the constitutional question is reached. I therefore dissent from the decision of the Court that we have jurisdiction in this case.