287 F.2d 520
 Hazel Anna WOLF, Appellant,
v.
John F. BOYD, District Director, Immigration and Naturalization Service; and William P. Rogers, Attorney General of the United States, and all persons acting with, through or for them, Appellees.
 No. 16944.
 United States Court of Appeals Ninth Circuit.
 February 1, 1961.
 
 Philip L. Burton, John Caughlan, Seattle, Wash., Siegfried Hesse, Berkeley, Cal., Francis J. McTernan, Garry, Dreyfus, McTernan & Keller, San Francisco, Cal., for appellant.
 Charles P. Moriarty, U. S. Atty., Richard F. Broz, Asst. U. S. Atty., Seattle, Wash., Charles Gordon, St. Paul, Minn., Regional Counsel for Northwest Region, Immigration and Naturalization Service, for appellee.
 Before HAMLEY, MERRILL and KOELSCH, Circuit Judges.
 MERRILL, Circuit Judge.
 
 
 1
 On May 13, 1960, appellant, a native of Canada and a resident of the United States since December 26, 1922, was notified by appellee Boyd to surrender herself into his custody on June 12, 1960, for immediate deportation to London, England. These proceedings in habeas corpus were then initiated by appellant on May 24, 1960.
 
 
 2
 In support of her petition, appellant contended, first, that, although she has never been naturalized, she is an American citizen by birth and is not subject to deportation, and, second, that her scheduled deportation to England is repugnant to the Constitution of the United States. In addition to discharge, appellant seeks a declaration of her status as a citizen and injunctive relief against deportation. To this end she moved in the court below for the convocation of a three-judge court pursuant to 28 U.S.C. § 2282.
 
 
 3
 Appellees moved for summary judgment and for an order denying convocation of a three-judge court. The District Court ruled that no substantial constitutional question was presented and accordingly denied convocation of a three-judge court. Summary judgment was rendered in favor of appellees upon the issue of appellant's citizenship. This appeal asserts that the court was in error in both respects. We need consider only the substantiality of the constitutional question.
 
 
 4
 Following the deportation order, appellant had designated Canada, the country of her birth and from which she had entered the United States, as the place to which she wished to be deported. Canada refused to accept her, ruling that by appellant's marriage to an American citizen on December 30, 1926, she had lost Canadian citizenship.[1]
 
 
 5
 Section 243(a) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1253 (a), specifies the places to which an undesirable alien may be deported. In substance it provides for deportation to the country designated by the alien, if acceptable to such country; if not, then to any country of which such alien is a subject, national or citizen, if such country is willing to accept him into its territory. If not, then deportation shall be directed by the Attorney General to any country having such connection with the alien respecting birth, residence or entry into the United States, as is specified in six subparagraphs. Then follows subparagraph 7:
 
 
 6
 "If deportation to any of the foregoing places or countries is impracticable, inadvisable, or impossible, then to any country which is willing to accept such alien into its territory."
 
 
 7
 When Canada refused to accept appellant, the Attorney General, under § 243 (a) (7), sought to obtain England's consent to accept her. England consented.[2]
 
 
 8
 Appellant challenges the constitutionality of subparagraph 7, since the result is deportation to a country in which the alien has never lived and with which she has had no actual personal contact whatsoever — a country which in fact is not and never was her own, but is wholly foreign to her. She contends that expulsion from the United States under these circumstances cannot be regarded as deportation; that it cannot be justified as civil regulation of immigration and has become criminal punishment imposed without due process of law.
 
 
 9
 The issue upon this appeal is not whether appellant is correct in her construction of her constitutional rights, but whether her contentions raise a substantial constitutional question. In the words of the Supreme Court, a question is to be regarded as insubstantial if "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy." Hannis Distilling Company v. Mayor and City Council of Baltimore, 216 U.S. 285, 288, 30 S.Ct. 326, 327, 54 L.Ed. 482.
 
 
 10
 It must be recognized, in that area dealing with the deportation of long term residents of the United States, that the law is in a somewhat fluid and uncertain state[3] and that such law as has been announced is being subjected to thoughtful criticism.[4] Under these circumstances, any attempt to extend the administrative power to deport long term residents beyond that which so far has been recognized may be said to pose a constitutional question.
 
 
 11
 We are now faced for the first time with an attempt to deport permanently a long term resident to a country with which she has had no personal tie or connection whatsoever. The deportation is not, on a presumably temporary basis, to the most convenient way station from which she may ultimately reach her proper home. The issues presented by these circumstances have not clearly been settled by existing precedent and the constitutional question which they present is not, in our view, an insubstantial one.
 
 
 12
 The case, then, is one for a three-judge District Court. Florida Lime & Avocado Growers, Inc. v. Jacobsen, 1960, 362 U.S. 73, 80 S.Ct. 568, 4 L.Ed.2d 568. Such being the case, the District Court was without jurisdiction to proceed to judgment upon the question of citizenship and this court is without jurisdiction to pass upon that issue. Two Guys from Harrison-Allentown, Inc. v. McGinley, 3 Cir., 1959, 273 F.2d 954.
 
 
 13
 Reversed and remanded with instructions that summary judgment be set aside and that a three-judge District Court be convened for the purpose of entertaining appellant's petition.
 
 
 
 Notes:
 
 
 [1]
 The marriage on that date took place in Portland, Oregon. On July 10, 1942, it was terminated by divorce
 
 
 [2]
 Appellees also support the deportation upon the ground that although appellant had lost Canadian citizenship upon her marriage she had retained her citizenship in the United Kingdom under the British Nationality Act. The record suggests that this may be so under English law and was the reason for England's acceptance of deportation. The record, however, is not sufficient to establish the fact of appellant's English citizenship. We have no official acknowledgment to this effect by England nor any evidence of English and Canadian law upon the subject. The question of the substantiality of the constitutional question presented by this proposition is, therefore, not before us on this appeal
 
 
 [3]
 Mr. Justice Jackson, dissenting in United States v. Spector, 1952, 343 U.S. 169, 178, 72 S.Ct. 591, 596, 96 L.Ed. 1353, stated:
 "Administrative determinations of liability to deportation have been sustained as constitutional only by considering them to be exclusively civil in nature, with no criminal consequences or connotations. That doctrine, early adopted against sharp dissent has been adhered to with increasing logical difficulty as new causes for deportation, based not on illegal entry but on conduct after admittance, have been added, and the period within which deportation proceedings may be instituted has been extended."
 Doubts have been expressed by other members of the court in Harisiades v. Shaughnessy, 1952, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586; Galvan v. Press, 1953, 347 U.S. 522, 74 S.Ct. 737, 98 L. Ed. 911; Rowoldt v. Perfetto, 1957, 355 U.S. 115, 78 S.Ct. 180, 2 L.Ed. 140; Perez v. Brownell, 1958, 356 U.S. 44, 78 S.Ct. 568, 2 L.Ed.2d 603; Abel v. United States, 1960, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668.
 
 
 [4]
 See: Hesse, The Constitutional Status of the Lawfully Admitted Permanent Resident, 68 Yale L.J., 1578, 69 Yale L.J., 262