359 F.2d 608
 Merrill L. NORTON, Appellant,
v.
Jack CAMPBELL, Governor of the State of New Mexico, Bruce
King, Speaker of theHouse of Representatives of the State of
New Mexico, W. C. Wheatley, Presidentor presiding officer
pro tempore of the Senate of the State of New
Mexico,HaroldRunnels, State Senator from Lea County, New
Mexico, and Finis Heidel, StateRepresentative from District
1, Lea County, New Mexico, Appellees.
 No. 8231.
 United States Court of Appeals Tenth Circuit.
 May 6, 1966.
 
 Barton L. Ingraham, Lovington, N.M., for appellant.
 Myles E. Flint, Santa Fe, N.M. (Boston E. Witt, Atty. Gen., on brief), for appellees.
 Before MURRAH, Chief Judge, and LEWIS and BREITENSTEIN, Circuit judges.
 MURRAH, Chief Judge.
 
 
 1
 This is an appeal by Norton, a New Mexico citizen and registered voter, from a judgment dismissing his suit for a declaration that the practice of electing two United States Representatives by statewide elections is unconstitutional and for an order dividing the state into two congressional districts unless the New Mexico legislature does so.
 
 
 2
 Since 1941 the State of New Mexico has been entitled to elect two members of the House of Representatives. The state has never been divided into districts and from the beginning the election officials have followed the practice of providing for the nomination and election of the two Congressmen by designation to numbered positions. The practice was codified in 1959.[1] In the exercise of its supervisory powers under Article I, Section 4 of the Constitution,[2] Congress since 1929 has pertinently provided that until a state is redistricted after any apportionment, the representatives to which the state is entitled shall be elected in the following manner: '* * * (2) if there is an increase in the number of Representatives, such additional Representative or Representatives shall be elected from the State at large and the other Representatives from the district then prescribed by the law of such state; * * *.' 2 U.S.C. 2a(c).
 
 
 3
 The appellant does not attack the state statute, but it says that it is inapplicable to the New Mexico situation. The trial court held that the federal Act did 'permit and approve' elections at large. While the federal statute may have contemplated redistricting after any apportionment, we do not think it should be construed to prohibit elections at large, i.e. see Article I, 4. Appellant also pretends not to attack the state statute, but as the trial court observed, the court could not grant the relief sought without invalidating its provisions, and we take appellant's case as necessarily drawing into issue the constitutionality of the state act.
 
 
 4
 In the trial court, after the issues were drawn and apparently during the course of the proceedings, the state suggested that since the constitutionality of the state statute was in issue the case was appropriate for a three-judge court under 28 U.S.C. 2281. But, inasmuch as no injunctive relief is sought against the operation of the statute, we do not think a three-judge court was required. See Smith v. Wilson, 273 U.S. 388, 47 S.Ct. 385, 71 L.Ed. 699; Farmers' Gin Co. v. Hayes, D.C., 54 F.Supp. 43; Benoit v. Gardner, 1 Cir., 351 F.2d 846; United States ex rel. Watkins v. Commonwealth of Pennsylvania, D.C., 214 F.Supp. 913; and see generally Florida Lime and Avocado Growers, Inc., et al. v. Jacobsen, 362 U.S. 73, 80 S.Ct. 568, 4 L.Ed.2d 568; Swift & Co., Inc. et al. v. Wickham, Commissioner of Agriculture & Markets of New York, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194.
 
 
 5
 The trial court seemed to think that the asserted grievance was not justicible, and Mr. Justice Frankfurter in Colegrove v. Green, 328 U.S. 549, 66 S.Ct. 1198, 90 L.Ed. 1432, thought the method and manner of electing members of the House of Representatives within a state was a political matter which could not be made a justiciable issue in the courts. But, Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, and Westberry v. Sanders,376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481, left no doubt that the asserted deprivation, impairment or debasement of voting rights within a state is justiciable and remedial in the courts upon petition by those whose votes are debased or diluted by state action. Since appellant seeks redress for the impairment or debasement of an alleged constitutionally protected voting right, the federal court is vested with jurisdiction to entertain the suit, and appellant undoubtedly has standing to maintain it.
 
 
 6
 The constitutional argument is to the effect that Article I, Section 2 of the Constitution providing that the 'House of Representatives shall be * * * chosen * * * by the people of the several states * * *' should be construed in its historical context to require division of the state of New Mexico into two districts of equal population having common geographical, economical and political interests; that in no other way can the manifest intendment of the framers of the Constitution be effectuated. A further argument is to the effect that at large elections in a state entitled to more than one Congressman works an abridgement of the privileges and immunities clause of Section 1 of the Fourteenth Amendment because Congressional districting prevails in 42 of the 50 states and most voters for the House of Representatives are members of less populous and smaller constituencies than appellant and those similarly situated in New Mexico.
 
 
 7
 It is appellant's contention that the historical analysis utilized in Westberry v. Sanders, supra, to construe the mandate in Article I, Section 2, that the House of Representatives shall be 'chosen * * * by the people of the several states' to mean that Congressional districts within a state must be of substantially equal population is equally applicable here to prohibit any state from electing more than one representative at large and to require the state legislature to divide the state into districts of substantially equal population. Appellant does not rely upon the 'one man-- one vote' principle in Westberry and other apportionment cases as authority for his contention. The argument is rather to the effect that whereas Westberry announced a 'constitutional concept of equality' between voters, this court should by the the same parity of reasoning and based on the same historical analysis expound a new 'concept of constituency', i.e. districts composed of bodies of persons 'with common views, interests and often from a common locale from whose midst is chosen a delegate to represent them in (a Congress) made up of representatives of groups from different locales and with different views and interests.'
 
 
 8
 It is true, as appellant suggests, the architects of Article I, Section 2, contemplated that the House of Representatives would be chosen by the people from districts within a state rather than at large, i.e. see Mr. Justice Frankfurter in Colegrove v. Green, supra, 328 U.S. 553, 66 S.Ct. 1198, quoting from 1 Kent Commentaries (12th ed., 1873) 230, 231; see also Mr. Justice Black in Westberry v. Sanders, supra, quoting from 'The Federalist', No. 56, footnotes 39, 40, p. 15, footnote 45, p. 16.
 
 
 9
 Judge Choate in Gong v. Bryant, D.C., 230 F.Supp. 917 was of the view that constitutional sources clearly indicated that 'district representation in Congress was the deliberate choice and intent of our founding fathers.' And, 'the concept of district representation seems to have more historical substance to commend it than even the new rule of mathematical equality within districts.' But, Judge Choate cautiously refrained from requiring the legislature to divide the state of Florida into districts in obedience to the recognized historical intendment. Other courts dealing with the problem of redistricting in accordance with the Westberry mandate either expressed the view of assumed that Congressional elections at large within in state were constitutionally permissible. See Park v. Faubus, D.C., 238 F.Supp. 62; Moore v. Moore, D.C., 229 F.Supp. 435. The appellant here seems to be the first to contend that Article I, Section 2, is a mandate to state legislatures and to the Congress to provide for election of representatives by districts.
 
 
 10
 The careful analyses found both in Colegrove v. Green, supra, and Westberry v. Sanders, supra, show that for the first fifty years of our national existence and until 1842 elections of Congressmen at large within the states was 'widespread'. It was not until then that Congress for the first time exercised its supervisory powers under Article I, Section 4, to provide for the election of representatives by districts within a state, and as Mr. Justice Frankfurter observes in Colegrove, '* * * strangely enough, the power to do so was seriously questioned.' Id., 328 U.S. 555, 66 S.Ct. 1201. Thereafter and until 1929, Congress did from time to time provide for elections by districts within a state.
 
 
 11
 No one contends here that anything said in Westberry prohibits the people of a state from choosing their representatives at large. Indeed, after announcing the principle of equal representation for an equal number of people, Mr. Justice Black observed that 'This rule is followed automatically, of course, when Representatives are chosen as a group on a statewide basis, as was a widespread practice in the first 50 years of our Nation's history.' Mr. Justice Harlan in dissent construed the majority as holding that 'the Constitution requires States to select Representatives either by elections at large or by elections in districts composed 'as nearly as practical' of equal population * * *'. Id., 376 U.S. 20, 84 S.Ct. 536, 11 L.Ed.2d 481. In Smiley v. Holm, 285 U.S. 355, 374, 52 S.Ct. 397, 402, 76 L.Ed. 795, Mr. Chief Justice Hughes expressed the view of the court that under Article I, Section 2, the additional representatives allotted to a state under the Apportionment Act could 'appropriately be elected by the state at large'.
 
 
 12
 Aside from the statements of some of the framers of the Constitution concerning the desirability of electing representatives from districts within a state with power in the state and Congress to so require, i.e. see Article I, Section 4, we can find nothing in the historical analysis to indicate that anyone entertained the belief that the Constitution required it as a means, manner or method of insuring the election of the members of Congress 'by the people'.
 
 
 13
 Even though the election of members of the House of Representatives by districts within the state may be desirable and indeed historically contemplated by the framers of the Constitution, we cannot read into the command that they 'shall be * * * chosen * * * by the people' an implied constitutional obligation binding on the states that they must be chosen by the people of a district within a state which is representative of local interests, social, ideological, political or otherwise. We think the constitutional mandate is satisfied when representatives are chosen by the people of a district of substantially equal population as others or by all of the people of a state.
 
 
 14
 What we have said here is also completely dispositive of the appellant's contention that the at large elections in New Mexico deprive him of his privileges and immunities as a national citizen. There is no contention that New Mexico is malapportioned among the states, and if, as we hold, appellant and those similarly situated are not constitutionally entitled to vote in a district within the state of New Mexico, he cannot complain of the fact that voters in most other states elect their representatives by districts.
 
 
 15
 The judgment is affirmed.
 
 
 
 [1]
 New Mexico Statutes Annotated, 3-10-19.1, provides: 'In any primary, general or special election for United States representative, there shall be designated by the officer issuing the election proclamation as many places, consecutively numbered, as there are United States representatives to be elected and only one (1) United States representative shall be elected for each place designated. Each candidate upon filing his petition, or any convention called for nominating candidates, shall designate the position number for which he is a candidate and he shall be so designated on the ballot.'
 
 
 [2]
 Article I, Section 4 of the United States Constitution provides in pertinent part that 'The Times, Places and Manner of holding Elections for * * * Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations * * *.'